### WEST TEXAS UTILITIES CO. et al. v. RENNER et al.

No. 1335—5867.

Commission of Appeals of Texas, Section B.
Oct. 26, 1932.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, and Touchstone, Wight, Gormley & Price, of Dallas, for plaintiffs in error.

Ben L. Cox, Scarborough, Ely, Brown & King, and Dallas Scarborough, all of Abilene, and W. L. Thornton, John West, and Leachman & Gardere, all of Dallas, for defendants in error.

RYAN, J.

S. V. Renner filed this suit against West Texas Utilities Company and Texas Plains Public Service Company to recover damages alleged to have been sustained by him, while in the employ of Mosher Steel & Machinery Company, an independent contractor, engaged in the erection of an addition to a building owned by said Utilities and Public Service Companies.

It was agreed in open court that the West Texas Utilities Company and the Texas Plains Public Service Company are one and the same corporation, and therefore, as did the honorable Court of Civil Appeals, we shall refer to them as the one defendant below; West Texas Utilities Company.

It was alleged that said companies were engaged in the transmission and distribution of electric current in Upton county, and while Renner was at work on the defendants' property, as an employee of the Mosher Company, in the construction of said addition to defendants' plant, he received a charge of electricity from the wires of defendant, which were highly dangerous and not insulated or protected in any manner.

The grounds of defendants' negligence averred, were: Maintaining high-voltage wires in an uninsulated condition at and near the place where Renner was injured; failure to give him notice and warning of the danger incident to coming in contact with such wires or close proximity thereto; failure to cover or protect the high-voltage uninsulated wires with a rubber apron or other similar contrivance; failure to disconnect or cut off the high-voltage current while the work was being done; failure to have the premises of the work in a reasonably safe condition during prosecution of the work; failure to supply Renner with gloves of rubber or some similar material which would act as an insulator; in moving the wires, after Renner was engaged in doing his work, from a point not in close proximity to the building under construction, to a point within close proximity thereto, thus negligently increasing the hazard of Renner's work unnecessarily, and in disregard to his right of bodily security.

Mosher Steel & Machinery Company carried compensation insurance with the Texas Employers' Insurance Association under the Workmen's Compensation Act; the insurance

association paid out a total of $7,350.50 for compensation to Renner, and medical, hospital and nursing expenses in the treatment of his injuries, and intervened to recover back the payments made by it for compensation and expenses under the provisions of article 8307, Rev. Stat. 1925.

The Mosher Steel & Machinery Company was impleaded by the defendant below as a joint wrongdoer and joint tort-feasor, and judgment over sought against it in case of Renner's recovery.

The trial court instructed verdict in favor of the Mosher Steel & Machinery Company, and entered judgment as to it, accordingly.

In answer to special issues, the jury found that on July 27, 1927, the West Texas Utilities Company maintained its high-voltage wires in an uninsulated condition at and near the place where Renner was injured, which was negligence on the part of the company, and such negligence was a proximate cause of the injuries sustained by him; also, that at the time and on the occasion of said injury, said company was negligent in failing to disconnect or cut off the high-voltage current which was transmitted in the wires at and near where plaintiff was injured while plaintiff was engaged in his work, and such negligence was a proximate cause of plaintiff's injuries; also, that the company moved the transmission or electric wires in question from a point not in close proximity to a point within close proximity to such building after the work began in which plaintiff was engaged at the time of his injury, which was negligence and a proximate cause of plaintiff's injuries.

It appears from the testimony that in some manner, Renner lost his balance while working on the roof of the structure being built by the Mosher Company, and undertook to regain it while holding a metal bar (to be placed in the building) in his hand. In doing so, the bar touched or came into close proximity to the high-voltage wire from which he received the electric shock.

The defendant below pleaded that with knowledge of the danger in working near a high-voltage wire carrying electricity, and after being warned of such danger, Renner permitted a steel rod or bolt with which he was working to come in contact with such wire, and the injuries were due to his own negligence and not that of any other person.

On this point the trial court submitted this issue to the jury: "Was the plaintiff guilty of contributory negligence in permitting the steel rod, which he held in his hand at the time of the injury, to come in contact, if he did, with the high-voltage electric wire from which he received the electric shock?" which the jury answered, "No."

The plaintiff's damage was fixed by the jury at $22,500 and judgment accordingly rendered against the defendants; $7,350.50 thereof was apportioned to the Texas Employers' Association, and the balance, amounting to $15,149.50, to Renner, plaintiff below.

Said judgment was affirmed by the Honorable Court of Civil Appeals. 32 S.W.(2d) 264.

In their application for writ of error, plaintiffs in error contend that the trial court should have peremptorily instructed verdict for them, on the ground that Renner had knowledge of the danger of working near high-voltage lines and had been warned of such danger; therefore he was guilty of contributory negligence as a matter of law.

"The obligation resting on the user of wires highly charged with electricity to exercise reasonable care to avoid injury to all known to be rightfully coming into a place of danger from such wires," said Mr. Justice Greenwood in Galveston-Houston Electric Railway Co. v. Reinle, 113 Tex. 456, 258 S. W. 803, 805, "is thus stated in 9 R. C. L. page 1206, § 16, viz.: 'This duty of using the necessary skill and prudence to prevent injury to persons coming in contact with their wires is imposed upon electric companies, not only as regards the public generally, but also with respect to any individual engaged in a lawful occupation in a place where he is entitled to be. Such persons are not trespassers or licensees bound to take the premises in the condition in which they find them.' * * * The reason for the employer's liability for an injury occasioned like Reinle's is stated in Cooley on Torts to be: 'If I employ a contractor to do a job of work for me which, in the progress of its execution, obviously exposes others to unusual perils, I ought, I think, to be responsible. * * * for I cause acts to be done which naturally expose others to injury.' 2 Cooley on Torts (3d Ed.) p. 1091."

■■ As correctly held by the Court of Civil Appeals, the duty is imposed, in a case like this, not only to warn, but to use at least ordinary care to have the premises in a reasonably safe condition; the degree of care required must be commensurate with the danger. There was evidence sufficient to go to the jury, who found in answer to special issue No. 1 that the defendant was guilty of negligence in maintaining the high-voltage uninsulated wires at and near the place where Renner was working.

In applying the term "ordinary care" to a given state of facts, Judge Sharp, of the Commission of Appeals, in Dallas Railway & Terminal Co. v. Bankston, 51 S.W.(2d) 304, said the meaning of the common-law rule of ordinary care is elastic enough to meet all emergencies; the amount of care depends upon the exigency confronted. It may require one thing to be done at one place, and something else at another place; the degree of care

must be such as a person of ordinary prudence would exercise under like circumstances.

A company maintaining electrical wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go, either for work, business, or pleasure, to prevent injury. Rucker v. Sherman Oil & Cotton Co., 29 Tex. Civ. App. 418, 68 S. W. 818; Joyce Electric Law, § 445.

Plaintiff in error's contention that the jury should have been peremptorily instructed is overruled, as is its complaint that special issues Nos. 1 and 3 should not have been given; they were with reference to separate grounds of negligence properly averred and sustained by proof.

Plaintiff in error's next assignment of error is that the court erred in refusing defendants' special issue No. 6, as follows: "Did the plaintiff assume the risk, if any, attendant upon the work he was doing when he received the electric shock?"

■ The plaintiff was not an employee of the Utilities Company, and therefore the doctrine of assumed risk does not apply. It is only (as correctly held by the Court of Civil Appeals, and the authorities cited in their opinion) between master and servant that the doctrine of assumed risk applies, in this state. As said in 26 Cyc. p. 1180 (a), the doctrine of assumption of risk is distinct from that of contributory negligence, and rests upon an agreement of the servant with his master, express or implied, from the circumstances of his employment, that his master shall not be liable for any injury incident to the service resulting from a known or obvious danger arising in the performance of the service, but even then the servant does not assume such risks as are created by the master's negligence.

■ It is contended that the answers to special issues Nos. 2 and 4 conflict with the answers to special issues Nos. 1 and 3, and therefore there is no basis on which to render a judgment, and a mistrial should have been declared. We overrule this contention.

Several and distinct grounds of negligence were alleged. In answer to special issue No. 1, the jury found that the company was negligent in maintaining its high-voltage wires in an uninsulated condition at and near the place where the plaintiff was injured, and this negligence was a proximate cause of the injury; to special issue No. 3, the jury found that the company was negligent in failing to disconnect or cut off the high-voltage current transmitted in its wires while plaintiff was engaged in his work, and this was a proximate cause of the injury.

In answer to special issue No. 5, the plaintiff was acquitted of contributory negligence.

One of the separate grounds of negligence alleged by plaintiff was the failure to cover or protect the high-voltage wires with a rubber apron or other similar contrivance; the jury found in answer to special issue No. 2, that this was not negligence, and not a proximate cause of the injuries. The company's testimony was to the effect that it was not practical to insulate such a line as to make the insulation effective without expending a large sum of money; the insulation would have to be done when the line is built.

It was in evidence that the current could have been disconnected or cut off. Witnesses familiar with the subject testified that this is called "killing" the line, and a company employee testified that other companies do not have protective measures and contrivances that are used to protect men from the current, that he had seen insulation made of rubber, but "if you attempted to put that over a 13,000 volt line you would probably get killed putting it on," and if rubber insulation or apron had been put on the lines it would have been more dangerous to the men working there. He testified further: "We do attempt to protect our men from hot lines. On all voltages below five thousand volts we use those protective devices, if it is over five thousand volts it is a job that would be done by the hot stick crews. We send in those crews to do the work. We 'kill the line,' issue a clearance on it, and work on it with the circuit dead. By 'killing the line,' I mean taking the current or voltage off of it; that is, open the switches and the wire doesn't carry any electric current."

The sole element of negligence was not "failure to insulate," disregarding the element of maintaining the dangerous wire at the place where Renner was required to work.

In Lofty v. Lynch-McDonald Construction Co., 215 Mo. App. 163, 256 S. W. 83, 87, the Kansas City Court of Appeals, in disposing of a similar contention to that made here, said: "But regardless of whether there was no negligence in the fact that the wires were uninsulated because the plans legislatively adopted by the city called for bare wires, nevertheless it was negligence to carry and maintain such wires over the shed * * * thereby endangering the life of one who might attempt to remove any of the pipes. [Citing authorities.] And the defendant guilty of such negligence would be liable for the death of one killed in the attempt to take said pipe down, provided he was in the exercise of due care and was rightfully so engaged."

In McCoy v. Texas Power & Light Co. (Tex. Com. App.) 239 S. W. 1105, 1110, Judge Randolph of the Commission of Appeals, wrote: "It is true that science has succeeded in harnessing the tremendous power of electricity,

and it is also true that no method has been discovered whereby this power can be confined to the wire which is its conductor, as it is utterly impractical to attempt to insulate the wires carrying the tremendous voltage amounting to 30,000 or 60,000 volts. * * * Because it is a legal business and in the service of the public should not, and does not, release the defendant from being subject to all the requirements of the law, that it conduct that business in such manner that will result in reasonable protection to those on its premises either on business or by invitation, express or implied."

In the Massachusetts case of Philbin v. Marlborough Electric Company, 218 Mass. 394, 105 N. E. 893, the person injured was in a tree on his father's land, and the wire which injured him passed on adjoining premises. The wires were uninsulated, and carried a current of 13,000 volts in such close proximity to the tree's branches as to create a danger of electricity passing on them whenever they were moistened with snow or rain, as they were liable to be at any time. The court held that because elsewhere similar wires carrying similar current are not insulated, or that the cost of insulation would have involved greater expense in the transmission of power, is not decisive in the company's favor; the safety of human life does not necessarily yield to the desirability of furnishing light or power as cheaply as may be to the user thereof.

That, it will be observed, was a case of negligent maintenance, as is the case at bar.

With reference to the jury's answer to special issue No. 2, the record shows much testimony that the use of rubber aprons and similar contrivances were not effective on wires of over 6,500 volts, which did not relate to the negligence in "maintaining" an uninsulated wire close to plaintiff, as did issue No. 1, but related only to the question as to whether the company should have thrown an ineffective contrivance over the wires in question, and it was not negligence to fail to use an ineffective device for protective measures.

The jury's finding in answer to special issue No. 3, that the company was negligent in failing to disconnect or cut off the high-voltage current while plaintiff was at work finds basis in the testimony above referred to. If the current had been "killed" by disconnecting, Renner would not have been injured as he was. The company, according to one of its witnesses, "killed" the current when its own crews were at work; that it should have done the same for Renner, in the exercise of proper care, is the effect of the jury's finding.

What has been said applies to the answer to special issue No. 4. The moving of the wires in question from a point not in close proximity to the place where Renner was at work, to a point within close proximity thereto, may well not have been a proximate cause of his injuries, as found by the jury, while the maintenance thereof in an uninsulated condition was negligence and a proximate cause of the injuries. There is no conflict in the findings.

This disposes of the material matters complained of in the application for writ of error, and we are in accord with the Court of Civil Appeals in reference thereto, except the assignment of error complaining of the argument to the jury by attorneys for defendant in error.

It appears from the bill of exceptions, upon which this assignment of error is based, that counsel for plaintiff in addressing the jury, stated: "Now, gentlemen, you have caught from the pleadings that Mosher Steel Company had insurance on its employees and this man has collected $7300.00 in compensation and doctors' bills. Before he can recover a nickel, gentlemen, he has got to recover over and above the amount the insurance company paid. In other words, gentlemen, the first $7300.00 of this verdict you find for the plaintiff will go to the insurance company. This man will not get one red cent unless he recovers it over and above $7300.00."

The objection was that it was a question of law as to how the verdict would be divided and not a question of fact, and that the argument was improper for that reason; the trial court overruled the objection, and permitted the statement to be made to the jury.

In the Court of Civil Appeals, the appellee objected to any consideration of propositions based upon such complaint, because the bill of exceptions preserving the objections to the argument do not disclose either that there was no evidence to justify the argument or that there was no argument on the part of the opposing counsel to provoke the argument complained of.

The Court of Civil Appeals erroneously sustained such objections, and declined to consider the propositions and assignments of error in reference thereto.

In Texas Indemnity Co. v. McCurry (Tex. Com. App.) 41 S.W.(2d) 215, 217, 78 A. L. R. 760, it was held that a bill of exceptions to improper argument is not required to negative any possible fact or state of attending circumstances that would render the objectionable matter without prejudicial effect. It was there stated: "The rule is now settled in this state that, where improper argument has been indulged in, the adverse complaining party is entitled to reversal of the judgment, as a matter of law, if under all the circumstances there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted. Bell v. Blackwell (Tex. Com. App.) 283 S. W.

765; Behringer v. South Plains Coaches (Tex. Com. App.) 13 S.W.(2d) 334; Hubb Diggs Co. v. Bell, 116 Tex. 427, 293 S. W. 808; Floyd v. Fidelity Union Casualty Co. (Tex. Com. App.) 24 S.W.(2d) 363; Hull & Kennedy v. Christian (Tex. Civ. App.) 283 S. W. 568; Missouri-Kansas-Texas R. Co. v. Thomason (Tex. Civ. App.) 3 S.W.(2d) 106, 107; McMahan v. City of Abilene (Tex. Civ. App.) 8 S.W.(2d) 554."

The objection to such argument should have been sustained.

Under the Workmen's Compensation Act (article 8307, § 6a), the insurer is entitled to subrogation to the injured employee's claim to the extent of the amount paid or assumed by it, and the excess of recovery only inures to the benefit of the injured employee, but there cannot be a double recovery. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517; Haynes v. Bernhard (Tex. Civ. App.) 268 S. W. 509; Lancaster v. Hunter (Tex. Civ. App.) 217 S. W. 765; Galveston-Houston Electric R. Co. v. Reinle (Tex. Civ. App.) 264 S. W. 783.

The special issue submitted was as follows: "If in answer to either of the special issues Nos. 1, 2, 3 and 4, you have found that the defendant was negligent and that such negligence was the proximate cause of plaintiff's injuries, if any, you will answer the following question:—What amount of money if paid at this time would justly and fairly compensate the plaintiff for such injuries, if any, that he may have sustained, which have been proximately caused by such negligence, if any?"

This meant only the one inclusive recovery; the apportionment of the part thereof to the insurance company would be a matter of law purely. The argument, in effect, informed the jury that the recovery for Renner's benefit should be over and above the amount paid by the insurer. This was not in accordance with the special issue submitted.

As said by Judge Critz in McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213, 216: "Clearly, the prime object, purpose, and intent of the law for submitting cases on special issues is to remove the jury from any bias in favor of, or prejudice against, either party to the suit, to relieve them from the duty of directly passing on who shall prevail in the suit, and to make it the duty of the jury to answer each question truly as they find the facts to be from the evidence, without regard to what the result of their answers may be. If the court or the attorney, or any one else, is allowed to tell the jury the legal result of the answers, and to appeal to them in argument to so frame their answers so as to accomplish a result rather than to answer the issues truly as they find the facts to be from the evidence, or if the

jury is permitted to agree on the result, and then designedly form the answers to accomplish such result, the law providing for special issue verdicts would be an idle and vain thing."

This is quoted with approval by Judge Sharp, in Fidelity Union Casualty Co. v. Cary (Tex. Com. App.) 25 S.W.(2d) 302.

The appeal was, to say the least, to give such damages as he ought to have, and then add the sum of $7,300 so that he would obtain damages in full and net to him, exclusive of what he had already received from the insurance company. One of the main objects in submitting a case on special issues is that the jury may solve disputed issues of fact without knowing the legal effect of their findings. Duron v. Beaumont Iron Works (Tex. Com. App.) 9 S.W.(2d) 1104.

Another portion of the argument complained of is as follows: "You know, twenty years from now, twenty-seven years from now, it will be, 'tap, tap, tap,' walking down the pavement. 'Tap, tap,' rain, snow, good weather, cold weather, hot weather, 'tap, tap.' He will just be hopping along on that peg, doing the best he can, while these officials of this company will be in their homes taking things easy, having forgotten about old Renner that they burned up out there in Upton County," which was unsuccessfully objected to as prejudicial, inflammatory, and out of the record.

We think this was improper argument, calculated to arouse the sympathy and prejudice of the jury. Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.) 26 S.W.(2d) 435, writ of error refused 119 Tex. 447, 31 S.W.(2d) 630; Security Union Ins. Co. v. Alsop (Tex. Civ. App.) 1 S.W.(2d) 921; Floyd v. Fidelity Union Casualty Co. (Tex. Com. App.) 24 S.W. (2d) 363.

Equally objectionable was the following argument, properly but futilely objected to: "If you pay me $3.00 a day to walk over town with my leg tied up like this (indicating); $3.00 a day like that (indicating) in twenty years' time, it would be $25,000.00 at $3.00 per day."

Plaintiff in error's contention that it has a right of recovery over, or a right of contribution, against the Mosher Steel & Machinery Company is without merit.

As correctly stated by the Court of Civil Appeals, the Mosher Steel & Machinery Company was not charged by the pleading or shown by the evidence to have been guilty of any active negligence, and, having protected itself by providing compensation insurance for its employees, could not be compelled to pay indirectly when no liability existed to pay directly.

We recommend that the judgment in favor

of the Mosher Steel & Machinery Company be affirmed, but that the judgments of the district court and Court of Civil Appeals as to the other parties be reversed, and the cause remanded for trial.

CURETON, C. J. ·

The judgments of the district court and Court of Civil Appeals are in part affirmed, and in part reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.