ROBERT R. WALKER, Inc., et al. v. KENOSHA AUTO TRANSPORT CO.

No. 6564.

Court of Civil Appeals of Texas. Texarkana.

April 5, 1951.

Rehearing Denied May 10, 1951.

Strasburger, Price, Holland, Kelton & Miller, Dallas, Bunyan L. Hutchinson, and Wheeler & Wheeler, all of Texarkana, for appellants.

Atchley & Vance and Robert S. Vance, all of Texarkana, for appellee.

HALL, Chief Justice.

This is an action brought by Robert R. Walker, Inc., against Richard R. Burgdorf and Kenosha Auto Transport Company, for damages to its truck and trailer by fire alleged to have been caused by the negligence of the servants of Burgdorf and Kenosha Auto Transport Company.

The case was tried before the court upon an agreed statement of facts and resulted in a judgment for appellant against Burgdorf in the sum of $1,143.83 and that appellant take nothing against Kenosha Auto Transport Company.

This appeal is rather complicated for the reason that Walker, Inc., and Burgdorf are appellants, and Kenosha Auto Transport Company and Burgdorf are appellees. Walker, Inc., has appealed because it was denied an additional recovery against Burgdorf for the sum of $118.83 towing fees paid by it to have its truck and trailer removed for repairs. Burgdorf has appealed because of the judgment against him, and brings forward several points a discussion of which, in our opinion, will determine the disposition of the entire case.

By his second point Burgdorf asserts that the trial court erred in rendering judgment against him "since as a matter of law the conduct of the employee of Kenosha Auto Transport Company was the sole proximate cause of the damage complained of."

No clearer statement of this case can be made than that contained in the agreed statement of facts upon which the judgment herein was entered. The pertinent part of the agreed statement of facts is "The Kenosha Auto Transport Company, a corporation, incorporated under the laws of the State of Wisconsin, had in its employ on the 18th day of February, 1948, one John Shaw, who on said date was operating a transport truck for the Kenosha Auto Transport Company, and the route followed by the said John Shaw required him to drive said transport truck through the city of Texarkana, and on said date to-wit, February 18, 1948, the said John Shaw drove said truck into Two States Service Station No. 2, which service station was owned and operated by Richard Burgdorf and Vera Burgdorf. The said John Shaw drove said truck into said service station for the purpose of having the same refueled and serviced, and when driving into said service station, drove said truck into the outside drive of said service station, sometime shortly prior to 3:00 o'clock P.M., of said date. After the said John Shaw had driven his truck into the said service station and while the same was being refueled and serviced a truck owned by Robert R. Walker, Inc., a corporation incorporated under the laws of the State of Indiana, was driven into the inside drive of said service station by LeVoy Meredith, employee and driver for Robert R. Walker, Inc., said truck being driven into the said service sta-

tion for the purpose of draining the left saddle gas tank of water believed to have accumulated in said tank. John Shaw, the driver of the Kenosha Auto Transport Company's truck, after his truck had been refueled and serviced, signed a ticket and signed 'out' at 3:00 o'clock P.M., and was prepared and ready to continue on his journey through Texarkana. At this time, the attendants of the Two States Service Station No. 2 were in the process of draining the gas and water from the tank of the truck of Robert R. Walker, Inc., by having first removed the plug from the bottom of said tank, and allowing the gasoline and water to run out, and the attendant, Akin, was playing a stream of water from a nearby hose upon the gasoline and water mixture from said tank, and washing it toward the drain and sewer outlet in the gutter of the street. While the gas was thus draining and a stream of water was being directed upon it as it drained, John Shaw, driver of the Kenosha Auto Transport Company truck, walked up to the scene to watch the procedure and while standing there, lighted a cigarette. He was immediately warned by LeVoy Meredith, driver of the Robert R. Walker, Inc., truck, to be careful about lighting matches around gasoline, whereupon the said John Shaw laughed and said, 'You know that gasoline and water will not burn,' and the said John Shaw, simultaneously with making this statement, struck a match and deliberately threw said match into the stream of gasoline and water, which mixture immediately ignited into flames."

In this connection it may be stated that it is Kenosha Auto Transport Company's contention that the act of its agent Shaw in causing the fire and damage to Walker's truck and trailer was done without the scope of his employment and not in furtherance of Kenosha Auto Transport Company's business. We shall discuss this phase of the case first.

A careful examination of the statement of facts will reveal that at the time Kenosha Auto Transport Company's agent Shaw struck a match and deliberately threw said match into the stream of gasoline and water, that he, Shaw, had "signed a ticket and signed 'out' at 3:00 P.M. and was prepared and ready to continue his journey through Texarkana."

After Shaw's truck had been serviced he left it and "walked up to the scene to watch the procedure (draining the water and gas from one of the tanks of the truck of Walker, Inc.), and while standing there struck a match and deliberately threw said match into the stream of gasoline and water." Clearly, in our opinion, Shaw in doing this act was not acting within the course of his employment with Kenosha, nor furthering his master's business; he had stepped aside and was acting on his own. Any other conclusion is repelled by the agreed statement. The facts show that Shaw was employed by Kenosha to drive an auto transport truck and deliver automobiles for it, and as a necessary incident to his employment he was to have his truck serviced and filled with gas. These duties were within the scope of his employment, but after the servicing had been completed and Shaw had signed out and was ready to go, his act in going to where the Walker truck gas tank was being drained and deliberately throwing a lighted match into the gas and water to prove that the mixture would not burn, was Shaw's own act for which Kenosha cannot be held liable. In one of the leading cases in this state involving a similar situation, Galveston H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S.W. 1073, 1074, 10 L.R.A., N.S., 367, it is said: "But we cannot agree that the evidence, regarded in its strongest light for plaintiffs, warrants the conclusion that Nicholls' act was done in the prosecution or furtherance of his employers' business. The case is controlled, in our opinion, by the proposition, in which all authority agrees that when the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone. Let it be conceded that in holding the hose in readiness to put out any fire that might again flare up, Nicholls was performing a duty as servant, and that had he while thus hold-

ing it, or in attempting to use it for the purpose for which it was held, negligently turned it against one of the other employes, his negligence would have been imputable to his employer as incidental to the effort to do that which was in the line of the servant's duty. It may be further conceded that if, in directing the hose at a fire to put it out, he had also struck with it one of the other servants, either to make him get out of the way, or for some other purpose, the motive thus partly influencing his act towards such other would not deprive it of its legal character, as done in the master's business. * * * But, when he goes entirely aside from his work, and engages in the doing of an act not in furtherance of the master's business, but to accomplish some purpose of own, there is no principle which charges the master with responsibility for such action."

See Branch v. International & G. N. Ry. Co., 92 Tex. 288, 47 S.W. 974; Grubb v. Galveston, H. & S. A. Ry. Co., Tex.Civ. App., 153 S.W. 694, writ refused; Beaumont & G. N. Ry. Co. v. Gonzales, Tex. Civ.App., 163 S.W. 619, writ refused; Rodgers v. Tobias, Tex.Civ.App., 225 S.W. 804, writ refused; Bresnan v. Republic Supply Co., Tex.Civ.App., 63 S.W.2d 1105, writ refused, and authorities there cited.

■■■ The first proposition, as to whether the act of Shaw, Kenosha's employee, was the sole proximate cause of the injury, raises the most serious issue in the case. It is common knowledge, of which we must take judicial notice, that gasoline is highly inflammable and will explode if brought in contact with a spark or flame. It is also common knowledge that the filling-station business is a hazardous one and the utmost care is required in handling oils and gasoline at such places. The City of Ft. Worth v. Gulf Refining Co., 125 Tex. 512, 83 S.W.2d 610, and cases there cited. Granting that Burgdorf was negligent in the manner in which he drained the water and gas from Walker's truck, do the undisputed facts show that Burgdorf in negligently performing the act of draining the automobile gas tank could have reasonably anticipated that the act of Shaw in deliberately striking the match and throwing it into the stream of gasoline and water, or some similar act, would have happened? We think it is well-settled law of this state that where one is guilty of negligence and a third party does an act which coupled with the negligence of the first party brings about an injury the first party is not liable for the consequent damages unless the act of the third party, or some similar act, could have been reasonably anticipated. Such is the rule laid down in the leading case of Texas & Pacific Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162, 163, opinion by Chief Justice Gaines of the Supreme Court. In that case it is said: "But it seems to us that as applied to the law of negligence, at least, a better ground for the rule is that a party should not be held responsible for the consequences of an act which ought not reasonably to have been foreseen. In other words, it ought not to be deemed negligent to do or to fail to do an act when it was not anticipated, and should not have been anticipated, that it would result in injury to any one. To require this is to demand of human nature a degree of care incompatible with the prosecutions of the ordinary avocations of life. It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed. 'It can hardly be negligent not to provide against what no one can anticipate,' * * * But it is generally held that, in order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." Citing Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U.S. 469, 24 L.Ed. 256. See also Interstate Circuit v. Van Dusen, Tex.Civ.App., 118 S.W.2d 635. The question that arises is whether under the agreed facts in this case, Burgdorf could have reasonably anticipated that someone would deliberately throw a lighted match into the water and gas mixture, or that some similar act would

probably occur. Loyd v. Herrington, 143 Tex. 135, 182 S.W.2d 1003. We do not think so. The act of Shaw in deliberately throwing the lighted match into the gas and water mixture constituted a new and independent cause which was itself the sole and proximate cause of the damage to Walker's truck and trailer.

It follows, then, from what we have said above, that the judgment of the trial court should be affirmed in so far as it finds in favor of Kenosha, and reversed and rendered with respect to the finding of damages against Burgdorf, and it is so ordered.

It is not necessary to discuss any of the other points brought foward.

The judgment of the trial court is affirmed in part and reversed and rendered in part.