**TEXAS UTILITIES ELECTRIC COMPANY, Through its TEXAS POWER & LIGHT DIVISION, f/k/a Texas Power & Light Company, Appellant,**

v.

**GOLD KIST, INC. et al., Appellees.**

**No. 11–89–241–CV.**

Court of Appeals of Texas, Eastland.

Sept. 19, 1991.

Rehearing Denied Nov. 21, 1991.

Ben D. Sudderth, Jim Parker, Comanche, David M. Weaver, Joann N. Wilkins, Burford & Ryburn, Dallas, for appellant.

Robert Waltman, Crowley & Waltman, Bryan, John C. Hart, Gabrielle H. Kickham, Robins, Kaplan, Miller & Ciresi, Dallas, R. Lawrence Purdy, Maslon, Edelman, Borman & Brand, Minneapolis, Minn., Roger L. Glandon, Glandon, Erwin, Scarborough, Baker & Gravely, Abilene, Stephen Ellis, Brownwood, Scott P. Stolley, Thompson, Coe, Cousins & Irons, Dallas, for appellees.

## OPINION

ARNOT, Justice.

Gold Kist, Inc., Durham Pecan Company,

Inc.,[1] and Columbian Peanut Company sued Higginbotham Bros. & Co. and Texas Utilities Electric Company (TP & L)[2] for damages to their peanuts and pecans resulting from a fire. A Higginbotham truck hit a guy wire attached to TP & L's pole causing the electrical transmission lines to vibrate and arc. The lines separated, falling across a warehouse where the produce was stored; and the arcing lines ignited the building. The three plaintiffs additionally sued Van–Walls Urethane Contractors, Inc., who installed insulation in Durham's cold storage building under a products defect theory. Although served, Van–Walls did not appear. The jury found that Higginbotham and TP & L were each 50 percent negligent and awarded damages. Prior to trial, Higginbotham settled with the plaintiffs under "Mary Carter" agreements. The trial court entered judgment against both Higginbotham and TP & L, jointly and severally. TP & L appeals. The judgment is modified and, as modified, affirmed.

In its first two points of error, TP & L argues that the trial court erred by submitting an instruction to the jury defining TP & L's duty in handling electricity as one of "high degree of care." In the charge to the jury, the trial court submitted the following definitions:

"Negligence" when used with respect to the conduct of Texas Power and Light Co. means failure to use a high degree of care, that is, failing to do that which a very cautious, competent, and prudent electric utility would have done under the same or similar circumstances or doing that which a very cautious, competent, and prudent electric utility would not have done under the same or similar circumstances.

"High degree of care" means that degree of care that would be used by a very cautious, competent, and prudent electric utility under the same or similar circumstances.

TP & L objected to the above negligence definition, urging that it imposed a higher duty than required by law.

The issue before us is what standard of care, "ordinary" or "high degree," is to be used with regard to alleged negligence in the use of electricity. This issue was addressed by the court in *Wendell v. Central Power and Light Company*, 677 S.W.2d 610 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). In that case, the trial court refused Wendell's tendered instruction imposing a higher than ordinary care standard on the appellee, a utility company. Justice Gonzales, writing for the court, examined the proper standard to be used, stating:

The Texas Commission of Appeals, in an opinion from which the language of the requested instruction is drawn, said:

[T]he duty is imposed, in a case like this, not only to warn, but to use at least ordinary care to have the premises in a reasonably safe condition; *the degree of care required must be commensurate with the danger.* (Emphasis in original)

\* \* \* \* \* \*

A company maintaining electrical wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go, either for work, business, or pleasure, to prevent injury.

*West Texas Utilities v. Renner*, 53 S.W.2d 451, 453, 454 (Tex.Comm'n App. 1932, holding approved). However, this "commensurate with the danger" standard does not impose a higher duty of care, it merely more fully defines what is ordinary care under the facts presented. In fact, the Court in *Renner*, set forth that:

[T]he meaning of the common-law rule of ordinary care is elastic enough to meet all emergencies; the amount of

---

**1.** Millers Mutual Fire Insurance Company, Durham's carrier intervened in this action under its subrogation rights.

**2.** Texas Utilities at the time of trial was known as Texas Power and Light.

care depends upon the exigency confronted. It may require one thing to be done at one place, and something else at another place; the degree of care must be such as a person of ordinary prudence would exercise under like circumstances.

*Id.* at 453–454.

We believe that the concept of ordinary care is sufficient in this case and the instruction was properly denied.

We think that the proper resolution of this issue in the case before us was stated by the court in *Wendell* when it said, "However, this 'commensurate with the danger' standard does not impose a higher duty of care, it merely more fully defines what is ordinary care under the facts presented" and by the court in *West Texas Utilities Co. v. Renner,* 53 S.W.2d 451 (Tex.Comm'n App.1932, holding approved), when it said, "[T]he meaning of the common-law rule of ordinary care is elastic enough to meet all emergencies; the amount of care depends upon the exigency confronted."

As authority for the use of a "high degree of care" standard, appellees urge that the submitted charge is taken from the suggested form found in 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 2.02 (1987) and is mandated by *Robert R. Walker v. Burgdorf,* 150 Tex. 603, 244 S.W.2d 506 (1951). In *Burgdorf,* workers at a filling station were draining the gasoline from the tank of a truck and washing the drained fuel with a water hose into a storm gutter. John Shaw, a customer of the filling station, came to observe the work. When Shaw lit a cigarette, the workers advised him to be careful around the draining fuel. Shaw insisted that water and gasoline would not burn and, to prove his point, threw the lit match into the stream. He disproved his theory. The Court of Civil Appeals in *Robert R. Walker v. Kenosha Auto Transport Co.,* 239 S.W.2d 174 (Tex.Civ.App.—Texarkana), *reversed,* 150 Tex. 603, 244 S.W.2d 506 (1951), held that Shaw's action was a new and intervening independent cause that could not have been reasonably foreseen or anticipated, thereby superseding any negligence by Burgdorf's workers. The Supreme Court in *Robert R. Walker v. Burgdorf,* supra, disagreed, holding that Shaw's action was concurrent negligence.

In discussing the aspects of concurrent negligence, the Court, in dicta, said:

[T]he filling station business is a hazardous one, requiring the utmost care in the handling of oils and high explosives. . . .

From those who handle explosives, combustible gases, gasoline, petroleum, electricity, and similar dangerous commodities, the law exacts a duty to protect the public which is proportionate to and commensurate with the dangers involved.

■ We do not agree with appellees' contention that the Court in *Burgdorf* mandates the use of a high degree of care standard in cases involving electricity. That "utmost care" must be used to prevent injury, when analyzed, is the same meaning as "ordinary care" that must be used in view of all the circumstances. The ordinary care required under the circumstances is, in its practical application and in view of the highly dangerous character of electricity, a relatively high degree of care. If we accept the suggested standard as proposed by the authors of the Texas Pattern Jury Charges for cases of electricity, then we must ask what amount of electricity will require the "high degree" standard: in all cases; 238,000 volts as carried in a transmission line; 220 volts or 110 volts as found in household currents; or a small amount of electricity sufficient to shock but not electrocute an individual? Will it apply only to utility companies or can it be extended to any person who handles, manufactures, sells, repairs, or installs any electrical product or appliance? The better answer is to allow the elasticity of the ordinary care standard to control the different situations.

■ The jury also found that TP & L's negligence constituted gross negligence. The charge contained the following instruction:

"Gross negligence" means such an entire want of care as to indicate that the act or omission in question was the result of

conscious indifference to the rights, welfare, or safety of the persons affected by it.

Therefore, for the jury to have found that TP & L was grossly negligent, it would have necessarily found that TP & L had not exerted even ordinary care. We find error in submission of the negligence definition as a "high degree of care" standard, but we find that the error was harmless. TEX. R.APP.P. 81(b)(1). TP & L argues that the error cannot be harmless because the "gross negligence" question was conditionally submitted. Therefore, TP & L argues it would not have been answered but for a positive answer to the submitted negligence question containing the wrong standard. However, TP & L did not object to the submission of the gross negligence question at trial and does not challenge this finding on appeal. Appellant's first two points of error are overruled.

In its third and fourth points of error, TP & L urges that there is no evidence or insufficient evidence to support the jury's finding that TP & L's negligence was a proximate cause of the fire.

James Adcock was driving a Higginbotham eighteen-wheel truck. As he negotiated a sharp turn departing the yard, he ran over a guy wire attached to a TP & L electric utility pole. The pressure on the guy wire caused the transmission lines to bounce to such an extent that the lines began to arc. One of the lines burned into two pieces and fell onto the roof of Durham's building and across a truck at the loading dock. Durham's building was located across the street from Higginbotham's yard. The electrical surges caused the tires of the truck parked at the loading dock to explode. Gary Marvin Damlo, the driver, was in the truck at the time of the accident. He was afraid to move for fear of being electrocuted. Damlo finally jumped clear of the truck. The electricity continued to arc, causing the insulation of Durham's building to catch fire

and damaging appellees' produce. Another line fell onto the wet pavement where it continued to arc. The lines continued to arc or short until a serviceman from TP & L manually disconnected them.

The parties allege that TP & L was negligent in the construction of the line: in that the spacing between the lines did not meet safety standards; because the system was designed so that it failed to override the safety cutoffs; and in not marking or constructing a protective barrier around the guy wire.

Although appellant argues that all its lines were in compliance with safety regulations, Gerald E. Hager, an electrical engineer, testified that the National Electrical Safety Code provides that lines should be designed and maintained so as to prevent facilities from being burned, that lines should be inspected periodically, and that a guy wire exposed to traffic should have a marker to make it more visible. Hager testified that, in his opinion, the lines burned down because of a breaker failure. In his opinion, the breakers failed to function properly causing the downed lines to reenergize rather than to disconnect the flow of electricity. The use of solid blade disconnects rather than fuses or breakers necessitated manual override.

■ Appellant argues that it was not reasonably foreseeable that the location or design of the guy wire posed a danger of a line, across and down the street, breaking and falling onto a building and causing immediate combustion of foam insulation installed by the building's owner.[3] Appellant was responsible for the placement and maintenance of the poles and guy wires. The guy wire, when originally installed, was shielded by a building and a tree. The building was torn down and replaced by a shed. The tree died and was later removed. This left eight feet of the guy wire exposed to traffic. The guy wire did not have a marker on it at the time of the

---

**3.** The test for foreseeability is whether a person of ordinary intelligence and prudence should anticipate the danger to others created by his negligent act even though it is not required that he anticipate exactly how injuries might arise.

*Yarborough v. Erway,* 705 S.W.2d 198 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); see *Blaustein v. Gilbert Co., Inc.,* 749 S.W.2d 633 (Tex.App.—Eastland 1988, no writ).

accident. Hager testified that TP & L could have used a marker on the guy wire to alert traffic of its presence, put up barricades around the guy wire as TP & L had in other areas, placed the guy wire at a 45–degree angle instead of a 30–degree angle, or relocated the pole and guy wire altogether. The evidence indicates that the condition of the pole, guy wire, and transmission lines were such that an average size man could press on the guy wire and cause the lines to vibrate and arc.

Finis Wayne Pinkerton was the district manager of TP & L at the time of the accident. He had retired at the time of the trial. Pinkerton was asked the following question:

Q: Mr. Pinkerton, if a guy wire—if it's foreseeable to Texas Power and Light that this guy wire can be accidentally contacted by eighteen wheel semis, would you agree that the Texas Power and Light people also understand and realize that that could result in the separation of one of these high voltage conductors just like what happened on March 3 of 1986?

A: It would be reasonable to think that it—this could happen.

■ There is some evidence to support the jury's finding of foreseeability.[4] Reviewing all of the evidence, this finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust.[5] Appellant's third and fourth points of error are overruled.

In its fifth point of error, appellant complains that the trial court erred in admitting the hearsay statements of Derroll Car-away. A.R. "Preach" Horton, General Manager for Higginbotham's, testified that Caraway, the former traffic manager of Higginbotham, said, "I have told T.P. & L. a dozen times to move the damn guy wire." Caraway died in 1987 prior to the trial. The trial court admitted the out-of-court statement as an excited utterance, an exception to the hearsay rule TEX.R.CIV. EVID. 803(2).

■ Appellant argues that the statement, which was made approximately 15 minutes after the accident, could not have been an excited utterance. The ultimate question is whether the statement was the result of reflective thought or was it rather a spontaneous reaction to an exciting event. Rule 803(2); McCORMICK, EVIDENCE § 297 (3d ed. 1984); *City of Dallas v. Donovan*, 768 S.W.2d 905 (Tex. App.—Dallas 1989, no writ); *First Southwest Lloyds Insurance Company v. MacDowell*, 769 S.W.2d 954 (Tex.App.—Texarkana 1989, writ den'd).

■ Although Horton arrived approximately 15 minutes after the accident occurred, the fire was still going when his conversation with Caraway took place. Horton stated that Caraway was excited, angry, and chewing on his cigar. At the time he made the statement, Caraway was still trying to determine whether their driver had hit the guy wire. Horton testified as to the following conversation that he had with Caraway:

Q: Describe what [Caraway] said when you saw him, and he was excited and he

---

**4.** A "no evidence" point may only be sustained when the record discloses one of the following: (1) a complete absence of the evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Insurance Company v. Thomas*, 678 S.W.2d 278 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.). Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361 (1960).

In determining a "no evidence" point, we consider only the evidence and inferences which tend to support the finding and disregard all evidence and inferences to the contrary. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex. 1974); In re King's Estate, 244 S.W.2d 660 (Tex. 1951). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld.

**5.** In determining a challenge to the factual sufficiency of the evidence, we must consider all the evidence in the case, both in support of and contrary to the finding, to determine if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Company*, 715 S.W.2d 629 (Tex.1986).

was chewing on the cigar. What did he say?

A: I asked him what happened and he said that Danny told me—I mean that James Adcock said that someone told him he had hit the guy wire. I said, "Well, do you think he did?" He said, "I don't know if he did or not." He said, "I have told T.P. & L. a dozen times to move the damn guy wire."

We find that the response was made under the stress of excitement caused by the event and that it was not the result of *reflective thought. Appellant's fifth point* of error is overruled.

Prior to the trial of this cause, Higginbotham, a defendant along with TP & L, entered into "Mary Carter" agreements with Gold Kist, Durham, and Columbian. By the terms of their settlements, Higginbotham retained the right to offset its payment by any amount the three plaintiffs recovered from TP & L. In its sixth point of error, TP & L complains that the trial was not a fair adversarial proceeding because the trial court failed to realign Higginbotham with the plaintiffs. We disagree.

Prior to trial, TP & L requested that the trial court realign the parties. In its motion, TP & L requested that Durham and Millers Mutual be required to designate one lead counsel, that Columbian and Gold Kist be required to designate one lead counsel, and that only one counsel for each interested party be allowed to participate. Appellees contend that TP & L has failed to preserve error because it never moved to have Higginbotham realigned. Nevertheless, TP & L complains that it was not obvious that its interest was adverse to Higginbotham's interest until Higginbotham stipulated, in the presence of the jury, that Higginbotham's driver was negligent in running over the guy wire and that it was responsible for his acts.

TP & L argues that this situation was similar to that in *City of Houston v. Sam P. Wallace and Co.*, 585 S.W.2d 669 (Tex. 1979). In that case, both Houston and Maurice Little had actions against the Wallace Company, their common adversary. After presentation of their respective cases, Little, the injured worker, settled his

claim against Wallace, his employer, and dismissed his suit. This settlement and dismissal were made without the knowledge of Houston. On final argument, the attorney for Little argued that the evidence would not support findings of various negligent acts by Wallace, his ostensible adversary. Little then argued that Wallace should win. The Supreme Court held that the error of the misalignment of the parties at the argument stage of the trial caused by the unexplained shift in Little's loyalty was such a denial as to cause and probably did cause the rendition of an improper judgment.

■ *Wallace* is dissimilar to the case before us. The case before us does not involve an unexplained shift in the adversarial alignment as was present in *Wallace*. From the first, the jury had been advised that the interest of TP & L was adverse to that of Higginbothams. The jury was informed during voir dire of the existence of the "Mary Carter" agreements and were advised that they would be called upon to apportion the amount of negligence between TP & L and Higginbotham. After deleting those portions that were objectionable to TP & L, copies of the settlement agreements were admitted into evidence. *City of Houston v. Sam P. Wallace and Co.*, supra; *General Motors Corporation v. Simmons*, 558 S.W.2d 855 (Tex.1977). The jury found that Higginbotham and TP & L were each 50 percent negligent. Moreover, even if the trial court erred, any error was not such a denial of TP & L's rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment in this case. TEX.R.APP.P. 81(b)(1). Appellant's sixth point of error is overruled.

In its seventh and final point of error, appellant complains that the trial court erred in refusing TP & L a dollar-for-dollar credit for the amount of Higginbotham's settlements with appellees. The issue before us is whether, by use of "Mary Carter" agreements, appellees, as claimants, can defeat a non-settling joint tortfeasor's right to a dollar-for-dollar credit. We hold that they cannot.

Plaintiffs Gold Kist, Durham, and Columbian sought recovery from Higginbotham

and TP & L based upon a negligence action and recovery from Van–Wall based upon an action for a defective product, insulation. Higginbotham settled with the three plaintiffs as to their action against Higginbotham. Under the terms of the agreements, Higginbotham agreed to pay Gold Kist $918,367.50; Durham between $989,731.11 and $1,075,333.90; and Columbian $52,367.77 with a right to deduct any amount that the three plaintiffs received from TP & L. These agreements were introduced into evidence and shown to the jury. At the end of trial, Higginbotham stipulated in the presence of the jury that its driver, Adcock, had been negligent. The action against Higginbotham was neither dismissed nor non-suited.

Prior to submission of the case to the jury, TP & L filed its motion for a dollar-for-dollar credit pursuant to TEX.CIV. PRAC. & REM.CODE ANN. § 33.014 (Vernon 1986). However, plaintiffs Gold Kist, Durham, and Columbian submitted an issue to determine not only the negligence of TP & L, the non-settling joint tortfeasor, but also the negligence of Higginbotham, the settling joint tortfeasor.

The issues and answers read as follows:

QUESTION NO. 1

Did the negligence, if any, of the parties named below proximately cause the fire in question in this case?

| | | |
|---|---|---|
| a. | Higginbotham Bros. & Co. | Yes |
| b. | Texas Power and Light Co. | Yes |

QUESTION NO. 2

For each party found by you to have caused the fire, find the percentage caused by:

| | | |
|---|---|---|
| a. | Higginbotham Bros. & Co. | 50% |
| b. | Texas Power and Light Co. | 50% |
| c. | Van–Wall Urethane Contractors | 0% |
| | Total | 100% |

The jury also found that Gold Kist was damaged $921,174.09; Durham $552,-850.81; and Columbian $51,247.84.

In response to TP & L's complaint of the trial court's refusal of its request for a dollar-for-dollar credit, appellees[6] argue that any rights of contribution should be determined by the applicable law as established in *Duncan v. Cessna Aircraft Company*, 665 S.W.2d 414 (Tex.1984), because of the inclusion of the defendant Van–Wall, a products liability defendant. TEX.CIV. PRAC. & REM.CODE ANN. § 33.001 et seq. (Vernon 1986) is limited to causes of action that seek to recover damages from negligence actions.[7] Van–Wall, although made a party to this suit, did not file an answer or make an appearance. Appellees Durham and Columbian urge that Van–Wall, by defaulting, has admitted liability. *Alvarado v. Reif,* 783 S.W.2d 303 (Tex. App.—Eastland 1989, no writ); *Southland Mower Co., Inc. v. Jordan,* 587 S.W.2d 215 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.). However, in answer to the appellees' tendered Question No. 2, the jury found that Van–Wall's product's defect did not contribute to the fire. Therefore, while originally a party and even though defaulting, the jury's response to Question No. 2 absolved Van–Wall of any responsibility for the damages. There being only negligence claims remaining as the basis for judgment in this case, Section 33.001 et seq. would apply.

Section 33.014 provides:

If the existence and amount of an alleged joint tort-feasor's negligence are

---

**6.** Because it retained the right to deduct any amount recovered from TP & L from its agreed settlements, Higginbotham joins in this point of error with the appellees to argue that TP & L is limited to a proportionate contribution. Also, interestingly, because the Court in *Cypress Creek Utility Service Company, Inc. v. Muller,* 640 S.W.2d 860 (Tex.1982), has held that the common-law rule of "one recovery" in cases of contribution is no longer applicable, appellees, Durham and Columbian, argue against the applicability of the dollar-for-dollar credit contribution, when normally the right to contribution should be of concern only to the liable defendants. (Although the Court in *Cypress* said, "Our hold-

ing is not to be interpreted as abolishing the *Bradshaw* rule in cases in which article 2212a § 2(e) does not apply," an election under article 2212a § 2(d) would mathematically result in "one recovery," the *Bradshaw* rule.) Further, we note that the remaining appellee, Gold Kist, does not bring a cross-point on this assigned error.

**7.** This case was filed December 18, 1986; therefore, the amendments effective September 2, 1987, to Section 33.001 et seq. are not applicable.

not submitted to the jury because the tort-feasor has paid an amount in settlement to a claimant and was not joined as a party defendant or having been joined, was dismissed or nonsuited after settling, each defendant is entitled to deduct from the amount for which he is liable to the claimant a percentage of the amount of the settlement based on the ratio of the defendant's negligence to the total negligence of all defendants.

It is apparent that the facts before us do not fit within Section 33.014. Here, the negligence of the settling joint tortfeasor, Higginbotham, was submitted to the jury, and Higginbotham, a party defendant, had not been dismissed or nonsuited after settling. However, TP & L seeks contribution rights under this section.

Section 33.015 provides:

If an alleged joint tort-feasor settles with a claimant but is joined as a party defendant when the case is submitted to the jury so that the existence and amount of his negligence are submitted to the jury and his percentage of negligence is found by the jury, the settlement is a complete release of the portion of the judgment attributable to him.

Because the negligence of the settling joint tortfeasor, Higginbotham, was found by the jury, appellees argue that the facts in this case can only satisfy the requirements of Section 33.015 regardless of TP & L's election prior to jury submission for credit under Section 33.014.

The election of either the dollar-for-dollar credit or proportionate reduction is made by the non-settling defendant. *Merit Drilling Company v. Honish*, 715 S.W.2d 87 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *McAllen Kentucky Fried Chicken No. 1, Inc. v. Leal*, 627 S.W.2d 480 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). A non-settling defendant cannot "ride both horses" and then make a decision. *Cypress Creek Utility Service Company, Inc. v. Muller*, 640 S.W.2d 860 (Tex. 1982); *Clemtex, Ltd. v. Dube*, 578 S.W.2d 813 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.). It is not until the jury returns a verdict that the parties can determine whether or not they made the right decision.

In *Stein v. American Residential Management, Inc.*, 781 S.W.2d 385 (Tex. App.—Houston [14th Dist.] 1989, no writ), the court said:

If we allow a Mary Carter agreement to override contribution rights, we would be allowing the collusion of two parties to destroy a legal claim which would otherwise belong to a nonparticipating person—a complete stranger.

We believe this reasoning to be dispositive of the issue before us.

Appellees Durham and Columbian argue that when the negligence of the non-settling joint tortfeasor is submitted and found by the jury, then the proportionate reduction credit of Section 33.015 applies, regardless of the non-settling tortfeasor's election of the dollar-for-dollar credit, urging *Cypress Creek Utility Service Company, Inc. v. Muller*, supra, as authority. In that case, the non-settling joint tortfeasor made an election for contribution rights under TEX.REV.CIV.STAT.ANN. art. 2212a, § 2(d) (Now TEX.CIV.PRAC. & REM.CODE ANN. § 33.014). The negligence of the settling joint tortfeasor was submitted and found by the jury. The Court said:

The plain language of Article 2212a § 2 requires that a proportional credit be applied whenever the negligence of the settling defendant is submitted to the jury; a dollar credit is applied only when there is no determination of the percentage of negligence attributable to the settling tortfeasor. When the negligence of a settling tortfeasor is submitted to the jury and is determined, the amount paid in settlement is irrelevant. (Citations omitted)

Appellees would urge that, in any case where the negligence of the settling joint tortfeasor is submitted and found, proportionate credit under Section 33.015 (formerly Article 2212a, § 2(e)) applies regardless of an election for a dollar-for-dollar credit under Section 33.014 by the non-settling joint tortfeasor.

In *Cypress,* the Supreme Court discussed the decision in *Deal v. Madison,* 576 S.W.2d 409 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). The Court said:

> In *Deal v. Madison,* Madison made no contention to the Court of Civil Appeals or to this Court on application for writ of error that the proportionate credit of section 2(e) should have been applied under the facts of that case. The opinion in *Deal v. Madison* does, however, imply that the negligence of a settling tortfeasor may not be submitted at the request of a plaintiff in order to trigger section 2(e). To the extent *Deal v. Madison* can be read to hold that section 2(e) applies only at the option of the defendant, it conflicts with the statute and this opinion, and it is disapproved.

*Cypress* would appear to imply, in the above language disapproving *Deal,* that the negligence of a settling tortfeasor *may* be submitted at the request of a plaintiff in order to trigger Section 2(e). Such is the position taken by the appellees in the case before us. However, this statement by the Court in *Cypress* must be read in context with the unique facts of that case.

In *Cypress Creek Utility Service Company, Inc. v. Muller,* 624 S.W.2d 824 (Tex. App.—Houston [14th Dist.] 1981), *affirmed,* 640 S.W.2d 860 (Tex.1982), the settling tortfeasor's negligence was *necessarily* submitted to the jury due to the presence of a fourth plaintiff, *who had not made a settlement with any defendant.* Unlike the case before us, in *Cypress,* neither the non-settling joint tortfeasor nor the plaintiff could exercise a choice between nonsuiting or retaining the settling joint tortfeasor. We understand the Supreme Court in *Cypress Creek Utility Service Company, Inc. v. Muller,* 640 S.W.2d at 860, to state that, in a *Cypress* situation, a non-settling joint tortfeasor's right to a dollar-for-dollar credit under Section 33.014 will not override the right of a non-settling plaintiff to seek the percentage of negligence as to all party defendants. In such a factual situation, the non-settling joint tortfeasor will be limited to a percentage contribution under Section 33.015.

We cannot hold that, by virtue of a "Mary Carter" agreement, the plaintiff and settling joint tortfeasor can remove the non-settling joint tortfeasor's Section 33.014 dollar-for-dollar credit election. In this case, Higginbotham had settled with the plaintiffs Gold Kist, Durham, and Columbian. TP & L elected to seek its rights to contribution under Section 33.014. The submission of Higginbotham's negligence was an immaterial issue. TEX.R.CIV.P. 277.

Appellees contend that TP & L's election was untimely filed, yet the record shows that the motion to elect was filed before the jury retired to deliberate. Also, appellees urge that, in its motion, TP & L incorrectly referred to Section 33.012 and Section 33.012(b)(1), the 1987 tort reform version of the comparative negligence statute. Regardless, the motion itself clearly advises the trial court that TP & L was seeking a dollar-for-dollar credit form of contribution. Finally, appellees argue that TP & L waived any complaint by submitting an issue as to the percentage of Higginbotham's negligence. Again, this issue was immaterial after TP & L's election.

Appellant's seventh point of error is granted. The judgment is modified to provide TP & L contribution rights pursuant to Section 33.014. Appellant, TP & L, is entitled to a credit of $918,367.50 on the judgment against it in favor of Gold Kist; a credit of $989,731.11 on the judgment against it in favor of Durham and intervenor, Millers Mutual; and a credit of $52,367.77 on the judgment against it in favor of Columbian. As modified, the judgment is affirmed.

McCLOUD, C.J., not participating.