**Shelton BOYD d/b/a Boyd Welding, Appellant,**

v.

**AMOCO PRODUCTION COMPANY, Appellee.**

No. 11-89-164-CV.

Court of Appeals of Texas, Eastland.

March 15, 1990.

Rehearing Denied April 12, 1990.

Frank E. Murchison, Jim Hund, McCleskey, Harriger, Brazill & Graf, Lubbock, for appellant.

William J. Wade, Cecil Kuhne, Crenshaw, Dupree & Milam, Lubbock, for appellee.

DICKENSON, Justice.

The trial court granted Amoco Production Company's motion for summary judgment that it recover contractual indemnity from Shelton Boyd, d/b/a Boyd's Welding Service, for $240,000.00 which Amoco paid in settlement of a lawsuit filed by Boyd's employee, Jay Ernest Hunt, plus stipulated attorney's fees and prejudgment interest. We affirm.

### Factual Background

Amoco and Boyd executed a "Well and Lease Service Master Contract" on September 15, 1977, which provided in pertinent part:

10. In order to eliminate controversies between Contractor, its Subcontractors and Amoco and its joint owners, if any, and their respective insurers, Contractor assumes all liability for and hereby agrees to defend, indemnify and hold Amoco, its joint owner or owners, if any, and their insurers, harmless from and against any and all losses, costs, expenses and causes of action, including attorney's fees and court costs for injuries to and death of Contractor's and its Subcontractor's employees, *arising out of, incident to, or in connection with any and all operations under this contract* and whether or not such losses, costs, expenses and causes of action are occasioned by or incident to or the result of the negligence of Amoco, its joint owner or owners, if any, and its agents, representatives and employees. Contractor agrees to insure this assumption of liability. The liability assumed by Contractor pursuant to this clause shall be limited to the amounts carried by Contractor's current liability insurance, but in no event shall it be less than the minimum limits set out in Paragraph 11(b), below. (Emphasis added)

Pursuant to that contract Amoco employed Boyd from time to time to provide welding services on Amoco's equipment.

On January 30, 1984, Amoco asked Boyd to send a welder to one of its leases to cut the anchor bolts which secured a pumping unit to a concrete pad. Boyd's employee, Jay Ernest Hunt, went to the lease. He met two Amoco roustabouts, David Martin Anderson and William Verl Palmer. They drove to the well in one vehicle, and Hunt followed them in a welding truck. When they got to the well, they began doing the work which was to be done in preparation for the removal of the pumping unit. It was to be replaced with a larger pumping unit. After filling a hole with dirt where a pole had been removed, the two Amoco roustabouts proceeded to disconnect the sucker rods from the pumping unit. In the meantime Hunt had laid out his welding equipment lines and commenced to cut the anchor bolts. He was cutting the third bolt (out of the ten anchor bolts which secured the pumping unit to the pad) when the Amoco roustabouts loosened the bridle on the "horse's head" of the pump's rocker arm. The sucker rods slipped down, and then the large counterweights caused the rocker arm to move down. One of the counterweights grazed Hunt's head, and the rocker arm caught and mangled his left arm.

All three of the men at the scene made res gestae statements in which each of them accepted some of the blame for failing to make sure that the brake was set on the pumping unit. If the brake had been set, the accident would not have occurred.

Amoco and Boyd have stipulated that the $240,000.00 which was paid to Hunt by Amoco was a reasonable settlement; that Boyd has liability insurance with St. Paul Insurance Company in the amount of $300,000.00 to cover any liability which he might have to Amoco under the indemnity agreement; that the attorney's fees and expenses which Amoco incurred in the sum of $4,378.63 were reasonable and necessary for the defense of the lawsuit filed by Hunt against Amoco; and that the attorney's fees and expenses which Amoco incurred in the sum of $7,180.30 were reasonable and necessary for the handling of the lawsuit filed by Amoco against Boyd.

## Legal Issue

Do the undisputed facts show that the injuries to Boyd's employee "arose out of, was incident to, or in connection with" Boyd's welding operations? Boyd argues that his man was doing one "operation" (cutting the anchor bolts) while the Amoco roustabouts were doing a completely different "operation" (disconnecting the sucker rods from the pumping unit) and that the injuries arose from the Amoco operations rather than from the welding operations. Amoco argues that the welder and the roustabouts were all working to get the pumping unit ready for removal and replacement and that the welder's injuries clearly arose out of, were incident to, and were in connection with "any and all operations under this contract."

## Points of Error

Boyd presents three points of error. He argues (Point One) that the trial court erred in denying his motion for summary judgment because the summary judgment evidence conclusively establishes that the injury to his employee "did not arise out of, was not incident to, and was not in connection with" the work being performed for Amoco. Then, he argues in the alternative (Point Two) that the trial court erred in granting Amoco's motion for summary judgment because there is a genuine fact issue as to whether the injury to his employee "did not arise out of, was not incident to, or was not in connection with" the work being performed. In his final point, Boyd argues that the trial court erred in granting summary judgment for Amoco because there is no summary judgment evidence of the "current insurance" on September 15, 1977 (when the indemnity contract was executed).

## The Indemnity Agreement

█ The first two points of error are overruled. We agree with the trial court's ruling that the summary judgment evidence conclusively establishes that the welder's injuries arose out of, were incident to, and were connected with operations covered by the indemnity agreement.

The indemnity agreement is valid. See TEX.CIV.PRAC. & REM.CODE ANN. secs. 127.001 to 127.008 (Vernon 1986 and Supp.1990). It was also valid under the prior law. TEX.REV.CIV.STAT.ANN. art. 2212b (Repealed when the Civil Practice and Remedies Code was enacted). The indemnity agreement satisfies the "express negligence" test which was established in *Ethyl Corporation v. Daniel Construction Company*, 725 S.W.2d 705 at 708 (Tex.1987). See also *Atlantic Richfield Company v. Petroleum Personnel, Inc.*, 768 S.W.2d 724 at 726 (Tex.1989).

The indemnity provision involved in this case is quite broad. It covers "all" losses and costs for personal injuries to the welding contractor's employees which are incidental to, or connected with, "any and all operations" conducted by the welding contractor pursuant to the master contract dated September 15, 1977, and it expressly states that it covers causes of action resulting from the negligence of Amoco and its employees.

The cases upon which appellant relies are clearly distinguishable. *McClane v. Sun Oil Company*, 634 F.2d 855 at 859 (5th Cir.1981) (applying Texas law), and *Sun Oil Company v. Renshaw Well Service, Inc.*, 571 S.W.2d 64 at 71 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.), require that the indemnified injuries must have some "connection to the subject contract." The injuries to the welder were incidental to

and connected with operations under the indemnity agreement. In *Renshaw*, the Tyler Court held that the road maintenance "was unrelated to and had no connection with the well servicing work." In *McClane*, the Fifth Circuit said:

> [A]ll the surrounding facts and circumstances must be examined to determine whether the negligent act or omission had any connection with or relation to the performance of the work.

Here, the negligence was in failing to make sure that the hand brake was set before beginning the work. The welder and the roustabouts had equal opportunity to check the brake, and the res gestae statements are persuasive that this negligence was connected with and related to the welding. The brake should have been set before the welder got into a position of peril because it was obvious that the weight on the rocker arm would cause it to move when the rods were released by the bridle clamp on the "horse's head" of the rocker arm.

In *Brown & Root, Inc. v. Service Painting Company of Beaumont, Inc.*, 437 S.W.2d 630 at 631 (Tex.Civ.App.—Beaumont 1969, writ ref'd), indemnity was not allowed because the fatal injury to a painter:

> [W]as caused solely by negligence of pipe fitter employees of Brown & Root, Inc., which negligent acts and omissions were unrelated to the performance of the painting sub-contract work.

In the case before us the negligent failure to check the hand brake was related to the proper performance of welding work at the bottom of a large oil field pumping unit. In *Westinghouse Electric Corporation v. Childs–Bellows*, 352 S.W.2d 806 at 808 (Tex.Civ.App.—Fort Worth 1961, writ ref'd), the agreement did not provide for indemnity to the general contractor for its own negligence, and the sole negligence of the general contractor's employees caused the injuries to two Westinghouse employees who were hit by falling objects while they were working in an elevator shaft. The stipulations in that case were that the negligent employees were doing work which "had no connection whatever with the installation of the elevators." In *Martin Wright Electric Company v. W.R. Grimshaw Company*, 419 F.2d 1381 (5th Cir.1969) (applying Texas law), *cert. denied*, 397 U.S. 1022, 90 S.Ct. 1263, 25 L.Ed.2d 532 (1970), the general contractor was not allowed to recover on an indemnity agreement because the subcontractor's employees had finished their work before the fatal injury occurred. The deceased and other members of the electrical crew had taken their tools to the basement for storage. While leaving the basement area after the tools were stored, one of the electricians tripped and fell. The Court held that the fatal injuries did not arise out of or result from work covered by the subcontract.

### Current Liability Insurance

■ The third point of error is overruled. While Amoco failed to provide any summary judgment evidence of the "current liability insurance" as of September 15, 1977 (date of Well and Lease Service Master Contract), there is summary judgment proof (answers to interrogatories and stipulations) that on the date of the injury for which indemnification is sought, St. Paul Insurance Company has agreed to pay on behalf of Boyd's Welding Service:

> [A]ny final judgment rendered against Boyd as provided in the indemnity provisions of the "Well and Lease Service Master Contract" ... up to $300,000.00, the liability limit of the policy written by St. Paul.

The construction of the written contract is a matter of law for the courts to decide. *Ideal Lease Service v. Amoco Production Co., Inc.*, 662 S.W.2d 951 at 953 (Tex.1984). We agree with the trial court's interpretation that "current liability insurance" means the amount of insurance available on the date of injury.

The judgment of the trial court is affirmed.