154 S.W.3d 839 (2005)
COASTAL MART, INC. and Coastal Markets, Ltd., d/b/a Maverick Markets, Appellants,
v.
SOUTHWESTERN BELL TELEPHONE COMPANY, Appellee.
No. 13-02-094-CV.
Court of Appeals of Texas, Corpus Christi-Edinburg.
January 20, 2005.
*842 Audrey Mullert Vicknair, Roberta J. Hegland, Joseph A. Stallone, Bracewell & Patterson, L.L.P., Corpus Christi, David Lopez, Davis, Cedillo & Mendoza, San Antonio, for appellants.
Javier Aguilar, Ron Mendoza, Les J. Strieber, III, Ricardo G. Cedillo, Davis, Cedillo & Mendoza, Inc., Geoffrey Amsel, San Antonio, Ronald B. Walker, Ronald B. Walker & Associates, Victoria, Judith Lopez, Houston, for appellees.
Before Justices YANEZ, CASTILLO and GARZA.

OPINION
Opinion by Justice GARZA.
This is a contract dispute between Coastal Mart, Inc., Coastal Market, Ltd. d/b/a Maverick Markets (collectively "Coastal") and Southwestern Bell Telephone Company ("SWBT"). Underlying this dispute are wrongful death and survival actions filed against Coastal and SWBT by Guadalupe Ordonez and Maria Esparza for damages arising from the death of their daughter, Blanche Esparza. Ordonez and Esparza alleged that their child was killed due to the negligence of Coastal and SWBT in the design, placement, operation, and maintenance of SWBT pay phones in front of a convenience store operated by Coastal.[1] Ordonez eventually settled his claim with Coastal and SWBT, and the trial court ultimately issued a take-nothing judgment against Esparza. Before these actions were resolved, Coastal filed a cross-action against SWBT based on a license agreement executed by Coastal and SWBT that dealt with the pay phones involved in Blanche's death. The trial court entered a final summary judgment in favor of SWBT on Coastal's cross-action, and this appeal ensued. We affirm in part, see Tex.R.App. P. 43.2(a), and reverse and remand in part. See Tex.R.App. P. 44.1(b).

Issues on Appeal/Standard of Review
According to Coastal's cross-action, SWBT was obligated to indemnify Coastal for the claims alleged by the plaintiffs in the underlying actions, and in addition, SWBT was obligated to provide insurance for and defend Coastal against the plaintiffs' claims. Coastal's cross-action is thus primarily a claim for breach of contract; however, it also asserts that SWBT acted in bad faith as an insurance company, which is an extra-contractual claim. See Aranda v. Ins. Co. of N. Am., 748 S.W.2d 210, 212 (Tex.1988) ("[The] duty of good faith and fair dealing arises out of the special trust relationship between the insured and the insurer."). Coastal moved for summary judgment on both claims, as did SWBT.
Coastal raises four issues on appeal. It argues that the trial court erred by awarding *843 summary judgment to SWBT and not awarding summary judgment to Coastal because, as a matter of law, the evidence showed that (1) SWBT owed Coastal a duty to indemnify and hold Coastal harmless, (2) SWBT owed Coastal a duty to maintain insurance and to defend Coastal, (3) SWBT breached the license agreement, and (4) SWBT acted in bad faith. Coastal also asserts that it is entitled to reasonable attorney's fees under the civil practice and remedies code. See Tex. Civ. Prac. & Rem.Code Ann. § 38.001 (Vernon 1997).
Appellate courts review summary judgments de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex.1994); Tex. Commerce Bank-Rio Grande Valley, N.A. v. Correa, 28 S.W.3d 723, 726 (Tex.App.-Corpus Christi 2000, pet. denied). When both sides move for summary judgment and the trial court grants one side's motion without specifying its reasons, as in this case, the appellate court must review the motions and evidence and render the judgment that the trial court should have rendered. Comm'rs Court v. Agan, 940 S.W.2d 77, 81 (Tex.1997).

I. Duty to Indemnify
We begin with whether SWBT had a duty to indemnify Coastal under the license agreement. Indemnity agreements are construed under the normal rules of contract construction. Assoc. Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 284 (Tex.1998). The interpretation of an unambiguous contract is a question of law for the court to decide. N.M. Uranium, Inc. v. Moser, 587 S.W.2d 809, 814 (Tex.Civ.App.-Corpus Christi 1979, writ ref'd n.r.e.); see also Perry v. Houston Indep. Sch. Dist., 902 S.W.2d 544, 547 (Tex.App.-Houston [1st Dist.] 1995, writ dism'd w.o.j.). Unambiguous contracts are enforced as written. See, e.g., Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex.1996). When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument is a question of fact for the jury. Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex.1987). Whether a contract is ambiguous is a question of law. See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex.1995) (per curiam); see also Vermillion Constr. Co. v. Fid. & Deposit Co., 526 S.W.2d 744, 748 (Tex.Civ.App.-Corpus Christi 1975, no writ). If a written contract is worded so that it can be given a definite or certain legal meaning, then it is unambiguous. Nat'l Union, 907 S.W.2d at 520; see also Coker v. Coker, 650 S.W.2d 391, 393 (Tex.1983); Universal CIT Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, 157 (Tex.1951). An ambiguity does not arise simply because the parties offer conflicting interpretations. Lopez v. Munoz, Hockema & Reed, 22 S.W.3d 857, 861 (Tex.2000); Kelley-Coppedge, Inc. v. Highlands, 980 S.W.2d 462, 465 (Tex.1998). Rather, a contract is ambiguous only if two or more meanings are genuinely possible after application of the pertinent rules of interpretation to the face of the instrument. Daniel, 243 S.W.2d at 157. Parol evidence is not admissible for the purpose of creating an ambiguity. Highlands, 980 S.W.2d at 464. Only when a contract is first determined to be ambiguous may the court admit extraneous evidence to determine the true meaning of the instrument. Id.
The starting point of our inquiry is the operative language of the license agreement that creates and specifies the scope of SWBT's duty to indemnify:
SWBT shall indemnify and hold COASTAL ... free and harmless from and against any and all claims, liabilities, losses, liens, demands, damages, and causes of action of every particular character and kind ... which COASTAL may at any time suffer, incur, or sustain, *844 arising from or connected with SWBT's obligations hereunder....
This language limits SWBT's duty to indemnify to events "arising from or connected with SWBT's obligations" under the license agreement. We must therefore examine SWBT's obligations under the license agreement to determine if SWBT's duty to indemnify has been triggered. The relevant language is as follows:
SWBT [has] the right, obligation and license to install, operate, maintain and service public telephone(s) and associated equipment.... The location of the Public Telephone Equipment at each premises shall be mutually agreed upon between COASTAL and SWBT in order to satisfy considerations of safety and discouragement of undesirable utilization.
According to this language, SWBT had an obligation to place its telephone equipment in a location that satisfied "considerations of safety."
The next question is whether the claims against Coastal and SWBT "arise from" or are "connected with" SWBT's obligation to "satisfy considerations of safety." The claims alleged that Coastal and SWBT were negligent for having "public telephones placed in the unobstructed path of vehicular traffic." On their face, these claims "arise from" and are "connected with" SWBT's obligation to place its telephone equipment in a location that satisfied "considerations of safety."
SWBT argues that the claims do not "arise from" and are not "connected with" SWBT's obligations because (1) its "on-site obligations were strictly limited to installing, operating, maintaining and servicing the three pay phones"; and (2) "the injury sustained by Blanche was caused, both factually and legally, solely by the criminal actions of Mr. Godinez, not by SWBT." SWBT contends that "phrases such as `arise from' in an indemnity agreement are to be narrowly construed." In particular, SWBT argues that "where an indemnitor's work or service under a contract is limited in nature and performed in a safe manner and injury results due to the negligence of the indemnitee or a third party, the injury does not `arise from' and is not `connected with' the indemnitor's performance under the contract." See Brown & Root, Inc. v. Serv. Painting Co., 437 S.W.2d 630 (Tex.Civ.App.-Beaumont 1969, writ ref'd).
In a separate point, SWBT emphasizes that "it is not the allegations in a case but the actual facts of the case that matter" in deciding whether a duty to indemnify exists. See Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 210 (Tex.1999) ("The facts that entitle an indemnitee to seek indemnification through suit come into existence when the indemnitee's liabilities become fixed and certain by judgment."); Am. Alliance Ins. Co. v. Frito-Lay, Inc., 788 S.W.2d 152, 153-54 (Tex.App.-Dallas 1990, writ dism'd). SWBT points out that Coastal voluntarily settled its claim with Guadalupe Ordonez and argues that Coastal thereby "destroyed any forum for determining who was at fault." See Man GHH Logistics GMBH v. Emscor, Inc., 858 S.W.2d 41, 43-44 (Tex.App.-Houston [14th Dist.] 1993, no writ).
SWBT further argues that "[t]he duty to indemnify attaches only upon a finding of liability, not by virtue of mere allegations." See Ingersoll-Rand, 997 S.W.2d at 205 ("We adhere to the longstanding rule that a claim based on a contract that provides indemnification from liability does not accrue until the indemnitee's liability becomes fixed and certain, as by rendition of a judgment."). SWBT argues that the take-nothing judgment against Maria Esparza precluded a contractual duty to indemnify from arising.
We take this last point first. Neither SWBT's motions for summary judgment *845 nor its response to Coastal's motion for summary judgment argued that the judgment entered against Maria Esparza precluded SWBT's contractual duty to indemnify from arising.[2] Notably, summary judgment was entered against Maria Esparza on August 1, 2001, well before SWBT filed its response to Coastal's motion for summary judgment on October 26, 2001 and well before the trial court's final judgment of November 13, 2001.[3] SWBT thus had ample opportunity to raise this contention but failed to do so. The "No liability = No Indemnity" argument is being made for the first time on appeal.[4] It therefore cannot be considered as a basis for upholding the trial court's summary judgment. See City of Mission v. Ramirez, 865 S.W.2d 579, 581 (Tex.App.-Corpus Christi 1993, no writ) ("Summary judgments may not be affirmed or reversed on grounds not expressly set forth in the motions presented to the trial court.").
SWBT also failed to preserve the "No Liability = No Indemnity" argument as to the action filed by Guadalupe Ordonez. SWBT's motions and response made no argument that Coastal's settlement with Ordonez precluded contractual indemnification, even though Coastal settled its claim with Ordonez in 2000. Consequently, that argument cannot be considered as a ground for affirming the summary judgment for SWBT. See id.
We now evaluate SWBT's chief argument against contractual indemnity: the underlying claims do not "arise from" and are not "connected with" SWBT's performance under the contract. As a preliminary matter, we disagree that the contract's "arising from or connected with" language requires a determination that SWBT's actions constitute a legal or factual cause of the "claims, liabilities, losses, etc." for which indemnity is sought. Instead, the plain meaning of "arising from or connected with" is that Coastal must establish some nexus between SWBT's obligations under the contract and the detriment for which indemnity is sought. The nexus need not necessarily amount to direct or proximate causation. See Utica Nat'l Ins. Co. v. Am. Indem. Co., 141 S.W.3d 198, 203 (Tex.2004) ("`[A]rising out of' are words of much broader significance than `caused by.'"). In fact, the Texas Supreme Court has held that "arise out of" simply means that there is "a casual connection or relation." See id."Connected with" connotes an even more general nexus.
We conclude that Coastal established a sufficient nexus between SWBT's obligations under the contract and the loss for which it seeks indemnity. SWBT was obligated to "satisfy considerations of safety." The wrongful death and survival actions for which Coastal seeks indemnity dealt directly with whether that obligation had been met (i.e., whether Coastal and SWBT *846 were negligent for having "public telephones placed in the unobstructed path of vehicular traffic"). We therefore conclude that the actions "arise from" and are "connected with" SWBT's obligations under the contract. In reaching this conclusion, we note that by its own language, the indemnity provision applies "regardless of the joint or concurrent negligence of COASTAL." Therefore, it is of no consequence that Coastal shared SWBT's obligation to satisfy considerations of safety.
Coastal established as a matter of law that SWBT had a duty to indemnify Coastal. Coastal was therefore entitled to summary judgment on this claim. Coastal's first issue is sustained.

II. Duties to Maintain Insurance and to Defend
In its second issue, Coastal contends that paragraph 19 of the license agreement created an obligation on the part of SWBT to maintain insurance for Coastal and to defend it against the underlying claims.
In relevant part, paragraph 19 reads:
SWBT shall maintain or shall require and be responsible for ensuring that its contractors and agents maintain at all times during the term of this Agreement insurance satisfactory to COASTAL ... to protect SWBT and COASTAL from and against all claims, demands, and causes of action arising by reason of SWBT's access to COASTAL's premises....
Such insurance shall be considered primary insurance, and all insurance carried by COASTAL shall be considered secondary in relation thereto. Any and all deductibles in the required insurance policies shall be assumed by, for the account of, and at the sole risk of SWBT.
Texas courts follow the "Eight Corners" or "Complaint Allegation" rule when determining whether a duty to provide insurance or a duty to defend exists. See Am. Alliance, 788 S.W.2d at 153. This rule requires that only the allegations in the petition and the terms of the insurance policy be considered in determining whether a duty to provide insurance or a duty to defend exists. Feed Store, Inc. v. Reliance Ins. Co., 774 S.W.2d 73, 74 (Tex.App.-Houston [14th Dist.] 1989, writ denied). In this case, there is a license agreement, but there is no insurance policy. Consequently, we cannot apply the "Eight Corners" rule per se. Instead, we use the traditional rules of contract construction; however, because the duties to provide insurance and defend are triggered by the lawsuit, and not its ultimate outcome, we must consider the license agreement in light of the allegations of the petitions filed by Ordonez and Esparza. See id. at 75 ("[W]e have no business passing on the actual outcome of the ... litigation."); see also Am. Alliance, 788 S.W.2d at 154 ("The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit.").
We agree that the language of paragraph 19 created a duty for SWBT to maintain insurance, the express purpose of which was to protect SWBT and Coastal from and against all claims, demands, and causes of action arising by reason of SWBT's access to Coastal's premises. The pivotal issue is whether the claims, demands, and causes of action underlying this case arose "by reason of SWBT's access to Coastal's premises." We hold that they did. The plaintiffs in the underlying case alleged that their child was killed due to the negligence of Coastal and SWBT in the design, placement, operation, and maintenance of SWBT's pay phones. As noted above, SWBT had the "right, obligation and license to install, operate, maintain and service public telephone(s) and *847 associated equipment" on Coastal's premises. In addition, the license agreement provides: "If any Public Telephone Equipment appears to constitute a hazard ..., SWBT will be allowed to make adjustments or modifications in an attempt to alleviate the concern." To this end, the license agreement granted "SWBT and its service representatives, agents and employees reasonable access to the Premises for installing, servicing, repairing and maintaining the Public Telephone Equipment...." In short, SWBT had a right to access Coastal's premises to alleviate safety concerns and maintain the pay phones. This access was directly implicated by the plaintiffs' allegations, which complained of the design, placement, operation, and maintenance of the pay phones on Coastal's premises. Accordingly, we conclude that SWBT was obligated to provide Coastal with insurance.
In reaching this conclusion, we emphasize that the issue before this Court is not whether SWBT should be liable to Guadalupe Ordonez or Maria Esparza or whether its actions caused Blanche's death as a matter of law. The issue is whether the claims, demands, and causes of action filed by Ordonez and Esparza arose by reason of SWBT's access to Coastal's premises. Based on the allegations of the plaintiffs' petitions, we conclude that they did.
Next, we must determine whether SWBT had a duty to defend Coastal against the underlying lawsuits. See Reser v. State Farm Fire & Cas. Co., 981 S.W.2d 260, 264 (Tex.App.-San Antonio 1998, no pet.) ("The duty to defend and the duty to indemnify are separate and distinct duties."). We conclude that it did not. There is no language in the license agreement requiring SWBT to defend Coastal. SWBT had a duty to maintain insurance "to protect ... Coastal from and against all claims," but that duty was a duty to maintain insurance and not a duty to defend. Coastal's reply brief cites Mid-Century Ins. Co. v. Lindsey for the proposition that SWBT's "insurance would necessarily afford Coastal a defense in the proper circumstances"; however, Lindsey does not support such a proposition. See Mid-Century Ins. Co. v. Lindsey, 997 S.W.2d 153, 156 (Tex.1999). The sole issue in Lindsey was "whether the underinsured motorist provision of a standard Texas personal auto policy covers the insured's bodily injuries resulting from the unintentional discharge of a shotgun on a gun rack in a pickup truck parked nearby." Id. at 154.
Although the insurance SWBT was obligated to maintain may have provided Coastal with a defense, nothing in the license agreement contemplated a separate obligation for SWBT to defend Coastal. Coastal was entitled to a defense only to the extent of SWBT's duty to maintain insurance. SWBT was entitled to judgment as a matter of law on the issue of failure to defend and Coastal was entitled to judgment as a matter of law on the issue of failure to maintain insurance. Accordingly, we overrule Coastal's second issue as it relates to the duty to defend and sustain Coastal's second issue as it relates to the duty to maintain insurance.

III. Breach of Contract
In its third issue, Coastal argues that SWBT breached the license agreement by failing to defend, indemnify, and maintain insurance for Coastal. The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from the breach. Ford v. City State Bank of Palacios, 44 S.W.3d 121, 137 (Tex.App.-Corpus Christi 2001, no pet.). Coastal's motion established its entitlement *848 to summary judgment on its breach of contract claim. Coastal proved the existence of a valid contract, which it performed and SWBT breached by failing to indemnify Coastal and to maintain insurance. Coastal also proved that it suffered damages: it did not receive indemnity and insurance benefits. We therefore hold that Coastal was entitled to judgment as a matter of law on its claim for breach of contract. Coastal's third issue is sustained.

IV. Bad Faith
In its fourth issue, Coastal argues that SWBT acted in bad faith as an insurance company. SWBT, in contrast, maintains that there is no evidence that it (1) acted as an insurance company or (2) acted in bad faith. We agree with SWBT. Although we have concluded that SWBT had a duty to maintain insurance, Coastal provided the trial court with no basis for imposing a duty of good faith and fair dealing on SWBT. Accordingly, SWBT was entitled to judgment as a matter of law on Coastal's bad faith claim. We overrule Coastal's fourth issue.

Conclusion
The judgment of the trial court is affirmed in part, see Tex.R.App. P. 43.2(a), and reversed and remanded in part. See Tex.R.App. P. 44.1(b). Specifically, Coastal is entitled to judgment as a matter of law on its claim for breach of contract and reasonable attorney's fees under chapter 38 of the civil practice and remedies code. See Tex. Civ. Prac. & Rem.Code Ann. § 38.001 (Vernon 1997). Because fact issues remain as to the amount of damages to which Coastal is entitled on these claims, see Tex.R. Civ. P. 166a (stating that summary judgment is proper even if fact issues exist as to damages), the case is remanded to the trial court for further proceedings consistent with this opinion and necessary to resolve the questions of fact on the issue of damages. See Tex.R.App. P. 44.1(b).
Concurring Opinion by Justice ERRLINDA CASTILLO.
CASTILLO, Justice, concurring.
I concur with the majority's decision to remand. I write separately to explain the reasons I would affirm in part and reverse and remand in part.
This is a contractual indemnity case. By four issues, appellants Coastal Mart, Inc. and Coastal Markets, Ltd., d/b/a Maverick Markets (collectively, "Coastal") contend the trial court erred in granting summary judgment to appellee Southwestern Bell Telephone Company ("SWBT"). Coastal asserts: (1) SWBT is contractually obligated to indemnify Coastal in connection with a wrongful-death lawsuit that alleged Coastal and SWBT were negligent in the design, placement, operation, and maintenance of public pay telephones in front of a convenience store operated by Coastal (the "Claim"); (2) SWBT is contractually obligated to provide Coastal with insurance and a defense against the Claim; (3) SWBT acted in bad faith; and (4) SWBT breached its agreement.

I. HISTORY OF THE CASE
Between January of 1976 and September of 1979, SWBT installed three public pay telephones at a Maverick Market convenience store in Victoria, Texas. Effective May 1, 1995, Maverick Markets, Inc. assigned to Coastal all rights and obligations as lessee of the store's premises. In connection with the lease assignment, Coastal and SWBT executed an agreement (the "Agreement") that provided in paragraph 9 that:
SWBT shall indemnify and hold COASTAL, its agents, employees, officers, and directors free and harmless *849 from and against any and all claims, liabilities, losses, liens, demands, damages and causes of action of every character and kind, including without limitation, judgments, penalties, interest, fines, assessments, court costs, and any legal fees incurred in the defense of same (including attorney's fees incurred in enforcing this indemnity) which COASTAL may at any time suffer, incur or sustain, arising from or connected with SWBT's obligations hereunder, including without limitation:
A. personal injury, death and/or property damage, regardless of the joint or concurrent negligence of COASTAL; and
B. any negligent act or omission and/or intentional or willful misconduct of SWBT....
Paragraph 19 of the Agreement provided:
SWBT shall maintain or shall require and be held responsible for ensuring that its contractors and agents maintain at all times during the term of this agreement insurance ... to protect SWBT and COASTAL from and against all claims, demands, and causes of action arising by reason of SWBT's access to Coastal's Premises....
On June 6, 1995, six-year-old Blanche Esparza was in front of an SWBT pay telephone at Coastal's convenience store in Victoria. A drunk driver careened his truck through the store's parking lot and struck the child. The truck pinned the child against the pay phone's enclosure, severely injuring her. Blanche died as a result.
On June 22, 1995, Guadulpe Ordonez, Blanche's father, filed suit against Coastal, asserting wrongful death and survivorship claims. On June 6, 1997, Ordonez added SWBT as a defendant. On March 20, 2000, Maria Esparza, Blanche's mother, joined the lawsuit as a plaintiff. The Ordonez-Esparza family contended that Coastal and SWBT were negligent in not installing barriers between the parking lot and the pay telephones. Coastal demanded that SWBT indemnify it and provide a defense against the Claim. SWBT refused. Coastal defended itself through the conclusion of the Claim and sought indemnification and insurance benefits from SWBT pursuant to the Agreement. SWBT again refused. Coastal now claims that SWBT breached the Agreement by not indemnifying it and refusing to provide Coastal insurance coverage and a defense against the Claim.
Coastal and SWBT both moved for summary judgment. See Tex.R. Civ. P. 166a(c), (i). The trial court granted summary judgment to SWBT and denied Coastal's motion.

II. SUMMARY-JUDGMENT ANALYSIS

A. Summary-Judgment Grounds
In a traditional motion for summary judgment, Coastal asserted that: (1) SWBT is contractually obligated by paragraph 9 of the Agreement to indemnify Coastal and hold it harmless from the Claim; (2) SWBT is contractually obligated by paragraph 19 of the Agreement to provide Coastal with insurance and a defense against the Claim; (3) SWBT, which is self-insured, acted in bad faith when it refused to provide insurance benefits and payment to Coastal for the sums Coastal expended in settling the Claim; and (4) SWBT breached the Agreement by not indemnifying it and in not providing insurance benefits and a defense. See Tex.R. Civ. P. 166a(c). SWBT brought its own motion for summary judgment on Coastal's contractual indemnity claims, asserting both traditional and no-evidence grounds. See Tex.R. Civ. P. 166a(c), (i).
*850 In the traditional portion of its summary-judgment motion, SWBT asserted that: (1) it had no obligation to install bumper posts or barriers at Coastal's convenience store; (2) SWBT had no obligation under the Agreement to ensure the safety of Coastal's premises; (3) SWBT did not select the location of the phones at the convenience store; (4) SWBT did not design, configure, construct, or install the store premises; and (5) the absence of bumper posts was not a legal cause of Blanche's death. The no-evidence portion of SWBT's motion asserted in its entirety:
To prevail on its claim for contractual indemnity, Coastal must prove "the happening of the occurrence for which indemnity was promised." W. Dorsaneo, supra at 291-81[sic]. Here, this means that Coastal must prove that Ordonez and Esparza have asserted claims "arising from or connected with SWBT's obligations" under the Agreement. Agreement, at ¶ 9.
SWBT is entitled to a "no-evidence" summary judgment because there is no evidence that SWBT had an obligation to: (1) install bumper posts or barriers at the Store; (2) ensure the safety of Coastal's premises; (3) select or approve the location of the phones at the Store; or (4) design, configure, construct or install the building, sidewalk, parking lot or ramp on the premises. Further, as already discussed, the absence of bumper posts was not a legal cause of Blanche's death. Pursuant to Rule 166a(i) of the Texas Rules of Civil Procedure, the burden now shifts to Coastal to come forward with evidence that raises a genuine issue of material fact on the challenged element. Absent such a showing, SWBT is entitled to judgment on Coastal's contractual indemnity claim as a matter of law.

B. Summary-Judgment Standards of Review
On appeal, the standard of review for the grant of a motion for summary judgment is determined by whether the motion was brought on no-evidence or traditional grounds. Tex.R. Civ. P. 166a(i), (c); Ortega v. City Nat'l Bank, 97 S.W.3d 765, 771 (Tex.App.-Corpus Christi 2003, no pet.) (op. on reh'g). The difference in relative burdens between the parties in the two types of summary-judgment motions is significant. Id. Determination of the nature of the motion for summary judgment under analysis is critical. Id. Accordingly, I first address how to review both parties' motions.
Here, Coastal brought its motion for summary judgment on its claim for contractual indemnity on traditional grounds. On the other hand, SWBT asserted that it brought its motion under both traditional and no-evidence grounds. SWBT filed "unified summary judgment exhibits" applicable to another pending motion and to its motion for summary judgment on Coastal's contractual indemnity claim. I note that the mere existence of evidence attached to a no-evidence summary-judgment motion is not sufficient to allow the court to disregard the no-evidence motion. See Binur v. Jacobo, 135 S.W.3d 646, 651 (Tex.2004) (holding that evidence attached to no-evidence motion shall not be considered but motion should not be disregarded or treated as traditional motion). However, SWBT's no-evidence motion merely reiterated the grounds it asserted in its traditional motion. The no-evidence portion of SWBT's motion contained no argument, analysis, or case law.[1] Even so, "[i]f a *851 motion clearly sets forth its grounds and otherwise meets Rule 166a' s requirements, it is sufficient." See Binur, 135 S.W.3d at 651. Accordingly, I would separately analyze SWBT's traditional and no-evidence motions.
The function of summary judgment is to eliminate patently unmeritorious claims and defenses, not to deprive litigants of the right to a jury trial. Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex.App.-Corpus Christi 2003, no pet.). In both traditional and no-evidence summary-judgment motions, we review the evidence "in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences." See KPMG Peat Marwick v. Harrison County Housing Fin. Corp., 988 S.W.2d 746, 748 (Tex.1999); Branton v. Wood, 100 S.W.3d 645, 646 (Tex.App.-Corpus Christi 2003, no pet.). The movant bears the burden of showing both no genuine issue of material fact and entitlement to judgment as a matter of law. Hoyt, 105 S.W.3d at 345. We affirm a trial court's ruling on a summary-judgment motion if any of the theories advanced in the motion are meritorious. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex.1993). We review a summary judgment de novo to determine whether a party established its right to prevail as a matter of law. Provident Life and Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 216 (2003); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex.1985); Ortega, 97 S.W.3d at 771.

1. Traditional Motion under Rule 166a(c)
The non-movant has the burden to respond to a traditional summary-judgment motion if the movant conclusively: (1) establishes each element of its cause of action or defense; or (2) negates at least one element of the non-movant's cause of action or defense. Hoyt, 105 S.W.3d at 345. Thus, summary judgment for a defendant is proper if the defendant disproves at least one element of each of the plaintiff's claims or affirmatively establishes each element of an affirmative defense to each claim. Id.

2. No-Evidence Motion under Rule 166a(i)
We review a no-evidence motion for summary judgment under the same legal-sufficiency standard as a directed verdict. See Tex.R. Civ. P. 166a(i); see also Branton, 100 S.W.3d at 646. The movant must assert that there is no evidence of an essential element of a particular claim or defense which the nonmovant would have the burden of proving at trial. Branton, 100 S.W.3d at 647. By definition, the movant does not produce any evidence. See Tex.R. Civ. P. 166a(i). Rather, the nonmovant must produce sufficient evidence to raise a genuine issue of material fact as to the challenged elements. Id.; Branton, 100 S.W.3d at 647. We consider any quantum of evidence greater than a scintilla sufficient to raise a genuine issue of material fact. Branton, 100 S.W.3d at 647. More than a scintilla of evidence exists when the proffered evidence "would enable reasonable and fair-minded people to differ in their conclusions." Id. Conversely, less than a scintilla of evidence exists when the proffered evidence merely "creates a ... surmise or suspicion of a fact" as to the material elements. Id.

3. Dual Summary-Judgment Motions
When: (1) both sides move for summary judgment; and (2) the trial court grants one motion and denies the other, we review both parties' summary-judgment evidence and determine all questions presented. FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex.2000); Frost Nat'l Bank v. L & F Distribs., 122 S.W.3d 922, 929 (Tex.App.-Corpus Christi 2003, pet. filed). Since each party is a *852 movant, the burden is the same for both: to establish entitlement to summary judgment by conclusively proving all the elements of the cause of action or defense as a matter of law. Buccaneer's Cove, Inc. v. Mainland Bank, 831 S.W.2d 582, 583-84 (Tex.App.-Corpus Christi 1992, no writ). Neither may prevail because of the failure of the other to discharge its burden. Id. at 584. Where the only issue both movants presented to the trial court was a question of law, we render the judgment the trial court should have rendered. Tex.R.App. P. 43.2(c); Jones v. Strauss, 745 S.W.2d 898, 900 (Tex.1988). However, each party must carry its own burden as the movant and, in response to the other party's motion, as the non-movant. Swoboda v. Wilshire Credit Corp., 975 S.W.2d 770, 775 (Tex.App.-Corpus Christi 1998), disapproved on other grounds, Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 570 (Tex.2001). Thus, when a summary judgment denies one party's motion and grants another's, and both parties fail to carry their burden of proving no genuine issue of material fact and entitlement to judgment as a matter of law, we also have the authority to reverse the judgment and remand the case to the trial court for further proceedings. Tex.R.App. P. 43.2(d), 43.3(a); see Swoboda, 975 S.W.2d at 775; see, e.g., Garner v. Redmond, No. 13-02-00658-CV, 2004 WL 1746352, *6 (Tex.App.-Corpus Christi, Aug. 5, 2004, pet. denied) (memorandum opinion) (Yanez, J., dissenting) ("[A] genuine issue of material fact exists that would preclude summary judgment for either party."); Ross v. Access Healthsource, Inc., No. 08-03-00096-CV, 2003 WL 22870629, *5 2003 Tex.App. LEXIS 10232, *17 (Tex.App.-El Paso, Dec. 4, 2003, pet. denied) (memorandum opinion) (remanding for resolution of fact issue where both parties had moved for summary judgment).
The parties' arguments and briefing below and before this Court present a threshold question: Is either party entitled to judgment as a matter of law on the issue of whether Blanche Esparza's death arose out of or in connection with SWBT's obligations under the Agreement? See Boyd v. Amoco Prod. Co., 786 S.W.2d 528, 530 (Tex.App.-Eastland 1990, no writ). I would first analyze the traditional motions for summary judgment.

C. Disposition of Coastal's and SWBT's Traditional Summary-Judgment Motions

1. Interpretation of the Parties' Indemnity Agreement

a. The Law of Contractual Indemnity
A contract of indemnity is an original obligation between the contracting parties, independent of other agreements. Joseph Thomas, Inc. v. Graham, 842 S.W.2d 343, 346 (Tex.App.-Tyler 1992, no writ). Indemnity contracts are construed under the usual rules of contract construction. Gulf Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 424 (Tex.2000); Assoc. Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 284 (Tex.1998).
The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. Gulf, 22 S.W.3d at 424; Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex.1998). When determining the parties' intent, all parts of the contract are to be considered, as are the circumstances surrounding the contract's formation. Transcon. Gas Pipeline Corp. v. Texaco, Inc., 35 S.W.3d 658, 665 (Tex.App.-Houston [1st Dist.] 2000, pet. denied); Crown Centr. Petroleum Corp. v. Jennings, 727 S.W.2d 739, 741 (Tex.App.-Houston [1st Dist.] 1987, no writ).
*853 If a written contract is worded so that it can be given a definite or certain legal meaning, it is not ambiguous. Gulf, 22 S.W.3d at 424; Kelley-Coppedge, 980 S.W.2d at 464. If, however, the language of a contract is subject to two or more reasonable interpretations, it is ambiguous. Kelley-Coppedge, 980 S.W.2d at 464-65; Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex.1995) (per curiam). Mere disagreement by the parties over the meaning of a contract provision does not make it ambiguous. Kelley-Coppedge, 980 S.W.2d at 465; GTE Mobilnet of S. Tex. v. Telecell Cellular, Inc., 955 S.W.2d 286, 289 n. 1 (Tex.App.-Houston [1st Dist.] 1997, writ denied) (op. on reh'g).

b. The Scope of the Parties' Contractual Indemnity Agreement
SWBT does not dispute that it entered into an enforceable indemnity agreement with Coastal to indemnify Coastal for any claims for "personal injury, death and/or property damage, regardless of the joint or concurrent negligence of Coastal."[2] Rather, at issue is the correct interpretation of the phrase "arising from or connected with SWBT's obligations" under the Agreement. In other words, the legal issue is whether Blanche's death arose out of or is connected with SWBT's obligations under the Agreement so as to trigger its contractual indemnity of Coastal. See Boyd, 786 S.W.2d at 530. Thus, our analysis of the contract question necessarily requires a discussion of SWBT's tort standard of care, both as a public utility and as created by the obligations SWBT assumed under the Agreement.

(1) SWBT's Duties as a Public Utility
SWBT is a public utility. See Tex. Util.Code Ann. § 51.002(8) (Vernon 1997) (defining "public utility" as "a person ... that owns and or operates for compensation in this state equipment or facilities to convey, transmit, or receive communications over a telephone system as a dominant carrier."). To permit them to better serve the public, Texas law long has accorded special privileges and powers to public utilities. See Lone Star Gas Co. v. Mun. Gas Co., 117 Tex. 331, 3 S.W.2d 790, 792 (1928); Military Highway Water Supply Corp. v. Morin, 114 S.W.3d 728, 733 (Tex.App.-Corpus Christi 2003, pet. filed). "It is the policy of this state to protect the public interest in having adequate and efficient telecommunications service available to each resident of this state at just, fair, and reasonable rates." Tex. Util.Code Ann. § 52.001 (Vernon 1997). The privileges enjoyed by public utilities carry with them duties and obligations consistent with the purpose of their creation. Lone Star Gas Co., 3 S.W.2d at 792; Morin, 114 S.W.3d at 733. A public utility has a duty to exercise ordinary and reasonable care in performing its functions. Morin, 114 S.W.3d at *854 733; First Assembly of God, Inc. v. Tex. Utils. Elec. Co., 52 S.W.3d 482, 491 (Tex.App.-Dallas 2001, no pet.). The degree of care is commensurate with the danger. Morin, 114 S.W.3d at 734; First Assembly of God, 52 S.W.3d at 491. The commensurate-with-the-danger standard does not impose a duty higher than that of ordinary care. Morin, 114 S.W.3d at 734; First Assembly of God, 52 S.W.3d at 491-92. Rather, it fully defines what constitutes ordinary care under the facts presented. Morin, 114 S.W.3d at 734; First Assembly of God, 52 S.W.3d at 491-92. Thus, in performing its functions, a public utility must use reasonable care and prudence to prevent injury at places where others have the right to go for work, business, or pleasure. Morin, 114 S.W.3d at 734; see Tex. Utils. Elec. Co. v. Gold Kist, Inc., 817 S.W.2d 749, 752 (Tex.App.-Eastland 1991), rev'd on other grounds, 830 S.W.2d 91 (Tex.1992).

(2) SWBT's "Obligations" under the Agreement
The Agreement imposed on SWBT the "obligation ... to install, operate, maintain and service public telephone(s) and associated equipment, including pay telephones, enclosures, associated wiring and hardware ... at Coastal's specified premises...." Further, "[t]he location of the Public Telephone Equipment at each premises shall be mutually agreed upon between Coastal and SWBT in order to satisfy considerations of safety and discouragement of undesirable utilization." Also, "[i]f any Public Telephone Equipment appears to constitute a hazard [or] nuisance ... SWBT will be allowed to make adjustments and modifications in an attempt to alleviate the problem." I would conclude that, on this record, SWBT, as a public utility, owed in performing its obligations under the Agreement a duty of care to the general public to prevent injury to users of its public telephone equipment at Coastal's premises. See Morin, 114 S.W.3d at 734; see also Gold Kist, 817 S.W.2d at 752. Thus, if the Ordonez-Esparza family's negligence claim against SWBT and Coastal arose from or is connected with SWBT's obligations under the Agreement, SWBT must indemnify Coastal.
Texas law requires proof of three familiar elements to sustain a cause of action for negligence: (1) a legal duty owed by one party to another; (2) a breach of that duty; and (3) damages proximately caused by the breach. Morin, 114 S.W.3d at 733 (citing D. Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex.2002)). Proximate cause has two components: (1) cause in fact; and (2) foreseeability. Morin, 114 S.W.3d at 733 (citing Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex.1995)). The foreseeability component of proximate cause demands proof the defendant reasonably should have anticipated the danger to others created by its conduct. Morin, 114 S.W.3d at 737 (citing Boys Clubs of Greater Dallas, 907 S.W.2d at 477). In the context of proximate cause, foreseeability requires only the general danger to be foreseeable, not the precise sequence of events that produced the harm. Morin, 114 S.W.3d at 737 (citing Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex.2001)). I turn to the gravamen of the parties' dispute: whether Blanche's death under the facts of this case was foreseeable.

(3) Proximate-Cause Foreseeability
SWBT contends that the premises were safe, arguing that the driver's criminal conduct was the sole proximate cause of Blanche's death and, as a result, that the absence of bumper guards was not the legal cause. However, constructive knowledge of similar incidents may satisfy the foreseeability element of causation, even *855 when the incident resulted from the criminal conduct of a third party. See Mr. Prop. Mgmt. Co., 690 S.W.2d at 551 (holding that specific knowledge of previous rapes in area was not necessary for rape to be foreseeable when defendant had knowledge of high crime rate of area generally).
According to Howard Castille, a SWBT employee, SWBT knew of potential hazards associated with its public pay telephones at convenience stores:
Q: Are you personally familiar with any instances where a vehicle has collided with either the telephone equipment or a person using the telephone equipment?
A: Yes.
Q: Can you tell me of those instances, please?
A: An instance here in San Antonio. I do not recall the time frame. Early ' 80s, late '80s.
Q: What else?
A: An instance in the Rio Grande Valley.
Q: When was that?
A: Late '80s, I believe, possibly early '91-early '90s.
Q: What else?
A: This case and one other in July of '97.
Q: Where was that?
A: That was at a Maverick Market in Corpus Christi.
Q: In July of '97?
A: Yes. I believe it was July of '97.
Q: Are you familiar with an incident that occurred in Victoria in 1991 in which a person was hit  alleged he was hit in front ofa  while using a phone?
A: Only from the documents that I reviewed in this case.
* * *
Q: And how do you decide or how does Southwestern Bell decide-decide where to put the bumper posts?
A: They're for the most part again, they're depending on the size of the equipment. They are installed close to the equipment because there are bumper posts to prevent a car from bumping into the equipment.
* * *
Q: You don't know of any instance where bumper posts are placed around those phones or adjacent to those phones other than when a customer has asked you to do that?
A: Oh, yes, I do.
Q: And can you describe instances?
A: Well, I'm familiar with one in '97.
Q: What was that?
A: That was the Maverick Market at Old Brownsville Road.
Q: And what city is that in?
A: Corpus Christi.
Q: So bumper posts were placed around the phone there?
A: They were placed in front of the phone, yes.
Q: And that was not at the customer request?
A: That was with agreement with the customer.
Q: And who requested that?
A: We initiated the request.
Q: For what reason?
A: I had been contacted by my first line supervisor there. There had been an accident at that location, and he had made the recommendation to me that we should consider installation of bumper posts.[3]

*856 * * *
Q: And why, if you know, was that request initiated?
A: Because of an accident that occurred there.
Further, the summary-judgment evidence indicates that Maverick Markets, Coastal's predecessor in interest, asked SWBT to erect barriers in front of its public pay telephones at all of its locations, including the convenience store in Victoria involved in this case. SWBT refused. SWBT counters that it determined that public safety did not require barriers at every location and asked Maverick Markets to provide a list of the stores where barriers actually were needed. Maverick Markets did not get back to SWBT with the list. I find published and unpublished Texas cases of incidents similar to that which occurred here dating back almost fifty years. See, e.g., Gonzalez v. Stop N Go Mkts., No. 14-94-01029-CV, 1995 WL 645003 (Tex.App.-Houston [14th Dist.] Nov. 2, 1995, no writ) (not designated for publication); Brookshire Bros. v. Lewis, 911 S.W.2d 791 (Tex.App.-Tyler 1995, writ denied); Hendricks v. Todora, 722 S.W.2d 458 (Tex.App.-Dallas 1986, writ ref'd n.r.e.); Miller v. Southland Corp., No. 07-82-0045-CV, 1983 Tex.App. LEXIS 4913 (Tex.App.-Amarillo 1983, no writ); McAllen Kentucky Fried Chicken No. 1 v. Leal, 627 S.W.2d 480 (Tex.App.-Corpus Christi 1981, writ ref'd n.r.e.); Watkins v. Davis, 308 S.W.2d 906 (Tex.Civ.App.-Dallas 1957, writ ref'd n.r.e.).
I would agree with the Florida court of appeals' conclusion in a factually similar case involving injury to a customer using a pay telephone in front of a convenience store. See Cohen v. Schrider, 533 So.2d 859, 860 (Fla.App. 4th Dist.1988). The summary-judgment record in Schrider included the testimony of the loss prevention manager for 7-11. He testified that about ten similar accidents had occurred in the three years preceding the accident at issue. Id. Ten others had occurred in the two years afterwards. Id. The witness testified that 7-11 was looking for ways to prevent the accidents, including discussions to determine whether parking bumpers would help. Id. The Florida court disagreed with precedent from a sister court in holding that the summary-judgment record presented issues of fact for a jury:
We are aware of the decision in Schatz v. 7-Eleven, Inc., 128 So.2d 901 (Fla. 1st DCA 1961), a twenty-seven-year-old case which is very similar. In Schatz, the court said "it cannot be contended with any degree of reason or logic that the owner of a store ... should have anticipated that automobiles will be negligently propelled" into their invitees. The passage of the twenty-seven years and the knowledge and experience of 7-11 as pointed out by its Loss Prevention Manager are two factors which make this case different from Schatz. The foreseeability issue is more clear here; it is certainly a question for the jury in this case. Id.

Specifically, "[t]he absence of a history of similar accidents does not necessarily relieve a defendant business of a duty to erect bumpers, guardrails, or warning signs. The defendant business may have constructive knowledge of similar accidents at other similar locations. Constructive knowledge of these accidents may be sufficient to establish foreseeability." Springtree Props. v. Hammond, 692 So.2d 164, 168 (Fla.1997); see also Dalmo Sales of Wheaton, Inc. v. Steinberg, 43 Md.App. 659, 687, 407 A.2d 339 (1979) (holding that testimony that safety-oriented practice among traffic engineers of designing parking *857 lots so as to avoid encroachment on adjacent sidewalks was "common and fundamental" raised fact issue "that could enable an ordinarily intelligent mind to draw a rational conclusion therefrom in support of the right of the plaintiff to recover"). Accordingly, I would find that issues of fact remain as to whether the circumstances surrounding the Agreement's formation included SWBT's actual or constructive knowledge of similar accidents at other similar locations. See Transcon. Gas Pipeline Corp., 35 S.W.3d at 665; see also Crown Central Petroleum Corp., 727 S.W.2d at 741.
SWBT also asserts that the presence of barriers in front of the public pay telephones at Coastal's store would not have prevented Blanche's death. Coastal points to summary-judgment evidence to the contrary by way of expert testimony originally proffered by the Ordonez-Esparza family in support of the Claim. SWBT emphasizes Coastal's position in response to the Ordonez-Esparza family's claims that Coastal was not negligent in not providing barriers between its parking lot and the public pay telephones at its convenience store. At best, SWBT's arguments underscore that issues of fact remain to be resolved. See Mendoza v. Fid. & Guar. Ins. Underwriters Inc., 606 S.W.2d 692, 694 (Tex.1980) (finding that the weight to be given party's testimonial declarations that are contrary to position is to be determined by trier of fact).

(4) Use of SWBT's Public Pay Telephone Equipment
Finally, the summary-judgment record in this case contains conflicting evidence as to whether or not Blanche was using SWBT's pay telephone equipment at the time she was killed. According to Blanche's 10-year-old cousin who had gone to the store with her, the truck hit Blanche just as she hung up the phone:
Q: Can you tell us what you overheard?
A: She was telling the operator that she needed help. She was just playing around.
Q: Do you remember anything else she said?
A: Well, I remember when she was telling the operator that she needed help, that she had lost her quarter.
Q: Uh-huh.
A:  but instead of saying quarter she said that she had lost her telephone.
Q: How long after she hung the phone up, if you know, how long was it between that and the truck hitting her? I mean if you  I don't want you to guess at it. Just give us an idea. Was it right away? Was it a long time?
A: It may [sic] like right away like.
Coastal argues that this testimony shows that Blanche was using the phone. SWBT argues that she was merely playing on the phone and was hit after she had walked away from the phone. According to the only adult eyewitness, Blanche had just picked up the telephone receiver at the time the drunk driver struck her:
Q: Okay. Okay. Do you recall how long she was on the phone?
A: They had just come out of store. She set  I remember she set the Coke down and she had picked the phone up and then that's when the accident happened.
Q: Okay. Could you hear Blanche's conversation on the phone?
A: She hadn't  she hadn't dialed nothing yet. She had just picked it up.
Q: Okay. Now when you saw the truck hit Blanche, okay, was she already off the phone or was she still on the phone?
A: She still had the receiver in her hand.
*858 Coastal again argues that this testimony also shows that Blanche was using the phone. SWBT responds that Blanche was merely "walking in front of" SWBT's public pay telephone when she was killed.
Summary judgment on an indemnity claim is only proper where the undisputed facts show that the claims for which indemnity is sought arise out of or are connected with those contractual obligations for which indemnity attaches. See Boyd, 786 S.W.2d at 530. I would conclude that both parties failed to discharge their burden of proving no genuine issue of material fact and entitlement to judgment as a matter of law on the issue of whether the Claim arose out of or is connected with SWBT's obligations under the Agreement. See Buccaneer's Cove, 831 S.W.2d at 584. Issues of fact remain to be resolved in two respects before any conclusion may be reached that the Ordonez-Esparza family's claims triggered SWBT's duty to indemnify Coastal under the terms of the Agreement: (1) whether the circumstances surrounding the Agreement's formation included SWBT's actual or constructive knowledge of similar accidents at other similar locations so as to make Blanche Esparza's death under the facts of this case foreseeable; and (2) whether Blanche Esparza's death occurred while she was using SWBT's public pay telephone equipment. Accordingly, I would hold that the summary-judgment evidence does not establish as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of Coastal's cause of action for contractual indemnity. See Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.1997); see also Muston v. Nueces County Sheriff's Dep't, 122 S.W.3d 469, 472-73 (Tex.App.-Corpus Christi 2003, no pet.). I would sustain Coastal's first issue as it relates to both parties' traditional motions for summary judgment.

2. Interpretation of SWBT's Duty to Defend and Insure
Coastal maintains that paragraph 19 of the Agreement parallels the indemnity clause to create an unconditional obligation on the part of SWBT to defend against the Ordonez-Esparza family's claims. However, the duty to defend and the duty to indemnify "are distinct and separate duties." Utica Nat. Ins. Co. v. American Indem., 141 S.W.3d 198, 203 (Tex.2004); Reser v. State Farm Fire & Cas. Co., 981 S.W.2d 260, 264 (Tex.App.-San Antonio 1998, no writ). Unlike the indemnity clause in paragraph 9, paragraph 19 limits SWBT's duty to defend and insure to "all claims, demands, and causes of actions arising by reason of SWBT's access to Coastal's Premises...." Coastal agreed in paragraph 10 of the Agreement:
to grant SWBT and its service representatives, agents and employees reasonable access to the Premises for installing, servicing, repairing and maintaining the Public Telephone Equipment and for collecting the receipts from the Public Telephone Equipment....
It is undisputed that SWBT was not accessing Coastal's premises at the time of the occurrence in question. I would hold that the facts as alleged by the Ordonez-Esparza family did not trigger any duty SWBT owed Coastal to defend or provide insurance benefits on the Claim pursuant to paragraph 19.[4]See Stumph v. Dallas Fire Ins. Co., 34 S.W.3d 722, 729 (Tex.App.-Austin 2000, no pet) ("If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend the suit against its insured."). I would overrule Coastal's second issue. *859 Accordingly, I would also hold that SWBT did not act in bad faith when it refused to defend or provide insurance benefits for the Claim. I would overrule Coastal's third issue. Similarly, I would also overrule Coastal's fourth issue with respect to Coastal's breach-of-contract claim that SWBT breached the Agreement by not defending or providing insurance benefits for the Claim.

D. Disposition of SWBT's No-Evidence Summary-Judgment Motion
SWBT asserted that there was no evidence of "the happening of the occurrence for which indemnity was promised," an essential element of Coastal's indemnity claim on which Coastal would bear the burden of proof at trial. See Branton, 100 S.W.3d at 647. SWBT also asserted that there was no evidence that the absence of bumper posts was a legal cause of Blanche's death. I would conclude that the summary-judgment evidence discussed above is more than a scintilla that "would enable reasonable and fair-minded people to differ in their conclusions" on both issues. Id. I would hold that Coastal produced sufficient evidence to raise genuine issues of material fact as to the elements challenged by SWBT. See Tex.R. Civ. P. 166a(i); see also Branton, 100 S.W.3d at 647. I would sustain Coastal's first issue as it relates to SWBT's no-evidence motion for summary judgment.

III. CONCLUSION
I would sustain Coastal's first issue and reverse the judgment of the trial court on the indemnity question and remand for further proceedings. See Tex.R.App. P. 43.2(d), 43.3(a); see also Swoboda, 975 S.W.2d at 775. I would overrule Coastal's second and third issues and part of its fourth issue. Accordingly, I would affirm the trial court's summary judgment in favor of SWBT on Coastal's claims that SWBT owed it a duty under paragraph 19 of the Agreement to defend and provide insurance benefits on the Claim, acted in bad faith when it refused to do so, and breached paragraph 19 of the Agreement. See Tex.R.App. P. 43.2(a). I would hold that fact issues remain to be resolved with regard to the parties' indemnity agreement and, thus, not reach the part of Coastal's fourth issue asserting SWBT's breach of contract in refusing to indemnify Coastal pursuant to paragraph 9 of the Agreement. See Tex.R.App. P. 47.1. I would assess the costs of appeal to the party that incurred them.
NOTES
[1] On June 6, 1995, six year old Blanche Esparza was standing outside of a Coastal store and allegedly using a SWBT pay phone when she was hit by a pick-up truck driven by a drunk driver named Procoro Godinez. She died of her injuries four days later.
[2] SWBT filed two motions for summary judgment: one on June 26, 2001 regarding Coastal's claim for indemnification, and a second on August 23, 2001 regarding Coastal's claims for breach of contract (based on failure to maintain insurance and failure to defend), contribution, and statutory indemnity.
[3] The order of August 1, 2001 granted final summary judgment to Coastal on all claims asserted by Maria Esparza. Earlier, on July 26, 2001, the court had issued a similar order granting final summary judgment to SWBT on Esparza's claims.
[4] Although SWBT did, in fact, make "no liability" arguments to the trial court in its motion filed on August 23, 2001, those arguments were made regarding Coastal's claims for insurance and defense, contribution, and statutory indemnity. The arguments were not made as to Coastal's claim for contractual indemnity. In particular, SWBT did not argue that a contractual duty to indemnify can arise only upon a judgment of liability, which is its argument on appeal.
[1] Similarly, the reply point in SWBT's brief on appeal argues only "for the reasons set forth above" that Coastal produced no evidence to prove "the happening of the occurrence for which indemnity was promised."
[2] An indemnity agreement is "a promise to safeguard or hold the indemnitee harmless against either existing and/or future loss liability" and it creates a potential indemnity cause of action against the indemnitor. Dresser Indus. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex.1993). The "express negligence doctrine" provides that parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms. Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 707 (Tex.1987). The intent of the parties must be specifically stated within the four corners of the contract. Id. The language "regardless of the joint or concurrent negligence of Coastal" expressly states the intent of the parties that SWBT would indemnify Coastal for Coastal's own joint or concurrent negligence. See Gulf Oil Corp. v. Ford, Bacon & Davis, Tex., Inc., 782 S.W.2d 28, 30 (Tex.App.-Beaumont 1989, no writ) (interpreting language "whether arising out of concurrent negligence on the part of Owner" as satisfying express negligence doctrine).
[3] SWBT objected on several grounds to Castille's testimony offered by Coastal in support of its motion for summary judgment. SWBT also objected to the testimony of other witnesses on the grounds that the testimony was evidence of subsequent remedial measures. See TEX. R. EVID. 407(a). However, SWBT did not object that Castille's testimony incorporated evidence of subsequent remedial measures. See id.
[4] The indemnity agreement in paragraph 9 includes within its provisions a duty to indemnify Coastal for "any legal fees incurred in the defense of" the Claim.